[L.A. No. 30269. In Bank. Aug. 2, 1974.]

THE STATE OF CALIFORNIA et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
VETA COMPANY et al., Real Parties in Interest.

238

## COUNSEL

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, and Anthony M. Summers, Deputy Attorney General, for Petitioners.

No appearance for Respondent.

Rutan & Tucker, Milford W. Dahl, Sr., Homer L. McCormick, Jr., and Leonard A. Hampel for Real Parties in Interest.

## OPINION

**MOSK, J.**—Real parties in interest, two California corporations and a partnership (hereinafter collectively referred to as Veta), applied for a

permit from the California Coastal Zone Conservation Commission (hereinafter the Commission) to develop land within the coastal zone, as defined in the California Coastal Zone Conservation Act of 1972 (Pub. Resources Code, § 27000 et seq., hereinafter the Act).

The Commission denied the permit, and Veta filed a petition in the superior court for a writ of mandamus and other relief against the State of California, the Commission, its members, and two Commission employees.[1] Veta's petition set forth 6 causes of action, and in connection therewith, Veta filed a set of 81 interrogatories and a motion to compel answers. The Commission demurred generally and specially to each cause of action, except insofar as Veta sought a determination, pursuant to section 1094.5 of the Code of Civil Procedure, whether the Commission's order denying the permit was erroneous.[2] The Commission also opposed the motion to compel answers to the interrogatories. On January 14, 1974, the trial court overruled the demurrers and granted Veta's motion to compel answers. The Commission now seeks to review those rulings by prerogative writ. We issued the alternative writ because of the importance and urgency of the issues involved.[3]

---

[1] All the respondents below (petitioners herein) will be collectively referred to as the Commission, unless otherwise noted.

[2] Section 1094.5 provides in part: "(a) Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer, the case shall be heard by the court sitting without a jury. All or part of the record of the proceedings before the inferior tribunal, corporation, board or officer may be filed with the petition, may be filed with respondent's points and authorities or may be ordered to be filed by the court. . . .

"(b) The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.

"(c) Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record."

[3] We emphasize anew our observation in *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379], that we employ the prerogative writ to review rulings on pleadings only with great reluctance. However, we felt compelled to intervene in the early stages of the present case because of the prospect that the Commission's functions could be seriously hampered during the short term of its existence if it were required to defend unmeritorious lawsuits seeking damages based upon denial of permits. The primary function of the Commission is to formulate a

## The Underlying Action

The first cause of action asserted in the proceeding below seeks a review of the Commission's denial of the permit pursuant to section 1094.5 of the Code of Civil Procedure, and prays for damages of $14,777,987. The second count alleges that the Commission had a mandatory duty to grant the permit or perform certain other acts, and is based on the provisions of section 1085 of the Code of Civil Procedure, which provides a remedy sometimes referred to as "traditional mandamus."[4] The third seeks a declaration that Veta is entitled to construct its development without a permit from the Commission or that it is entitled to a permit based upon the showing made before the Commission. The fourth and fifth causes of action are related in that the fourth challenges the constitutionality of the Act and the fifth attempts to enjoin the Commission from expending public funds to administer the Act. The sixth cause of action seeks damages in inverse condemnation.

## First Cause of Action

The allegations of the first cause of action are as follows: During 1968, Veta determined to develop its property, formulated plans and obtained various permits toward that end, and expended over $1 million prior to February 1, 1973, in such efforts. Although Veta had a vested right to proceed with its development, it filed an application for a building permit with the South Coast Regional Commission in an effort to avoid dispute. The regional commission granted the permit, but notices of appeal from its decision were filed by various groups and persons. These purported appeals were invalid because, inter alia, they were not timely filed, the appealing parties had failed to exhaust their administrative remedies, and they had no standing to take an appeal. Thus, the state Commission had no jurisdiction to hear the appeals from the regional commission. At the hearing of the appeals, the Commission failed to afford Veta a fair hearing in that, among other things, the Commission failed to follow its own regulations or the Act, denied Veta sufficient time and opportunity to present evidence, failed to consider certain documents filed by Veta, and heard

plan for the coastal zone, to be submitted to the Legislature by December 1975. (Pub. Resources Code, § 27300 et seq.) The Act by its own terms will be repealed shortly thereafter. (Pub. Resources Code, § 27650.)

[4] Section 1085 provides: "It [the writ] may be issued by any court, except a municipal or justice court, to any inferior . . . board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right . . . to which he is entitled, and from which he is unlawfully precluded by such inferior . . . board or person."

evidence from the Commission staff in secret prior to the hearing. The Commission's decision was not supported by the evidence. Finally, since the Commission failed to make any findings prior to denying the permit, its determination was invalid and the decision of the regional commission became final. The allegations of the first cause of action are incorporated by reference in each of the subsequent counts.

The Commission demurred to the first cause of action on several grounds. ■ While conceding that the allegations were sufficient for the purpose of reviewing the denial of the permit under section 1094.5 of the Code of Civil Procedure, the Commission demurred generally to Veta's claim for damages, relying upon the immunities set forth in sections 818.4 and 821.2 of the Government Code. Those sections provide that neither a public entity nor a public employee is liable for injury caused by the refusal to issue a permit if the entity or employee is authorized to determine whether the permit should be issued.

It is obvious from the terms of the Act that the Commission is authorized to determine whether a permit should be issued. (Pub. Resources Code, § 27400 et seq.) Veta claims, however, that the immunity has no application to its first cause of action because that count is not founded upon the Commission's refusal to issue the permit but, rather, upon the Commission's violations of Veta's rights in the respects described in the complaint, particularly the denial of a fair hearing.

There is no merit to this contention. In order to avoid the application of the immunity sections of the Government Code, Veta attempts to elevate the alleged violations of its rights by the Commission in the course of the proceedings which led to the denial of the permit into the very foundation of its first cause of action. The purpose of section 1094.5 is to inquire into the validity of any *final* administrative order. The only final order in the present case is the denial of the permit, and that denial is obviously the gravamen of the first cause of action. Thus, there can be no doubt that Veta's claim for damages in the first cause of action is founded upon the denial of the permit by the Commission.

Veta further asserts that these immunity provisions are not a bar to its claim for damages because they are superseded by section 1095 of the Code of Civil Procedure, which allows damages in a mandamus action.[5]

---

[5]Section 1095 provides in part, "If judgment be given for the applicant, he may recover the damages which he has sustained, as found by the jury, or as may be determined by the court or referee, . . . and a peremptory mandate must also be awarded without delay."

Veta appears to argue that since section 815.2, subdivision (b), of the Government Code states that public entities enjoy the immunities of their officers "[e]xcept as otherwise provided by statute," section 1095 must be deemed to "otherwise provide."

This argument is also unmeritorious. It seems clear that sections 818.4 and 821.2 of the Government Code were intended by the Legislature to qualify section 1095 of the Code of Civil Procedure. The latter provision, which was in effect for more than a century before the enactment of the immunity provisions of the Government Code in 1963 (compare Stats. 1851, ch. 5, § 477, p. 126, with Stats. 1963, ch. 1681, § 1), merely authorizes damages in a mandamus proceeding where such damages are otherwise appropriate. **(2)** The general provisions of section 1095 of the Code of Civil Procedure were not intended to prevail over the specific immunities granted by sections 818.4 and 821.2 of the Government Code. Otherwise, those immunities would be rendered virtually inoperative since a cause of action for damages would be appropriate each time a permit was denied if the demand for damages was combined with a petition for a writ of mandate to compel the issuance of the permit.[6] The Legislature could not have intended to sanction evasion of the statutory immunity which it provided in sections 818.4 and 821.2 of the Government Code by such a simple pleading device.

Several cases have held that those provisions preclude damages against a city or a public employee for the refusal to issue a permit. (*Selby Realty Co.* v. *City of San Buenaventura, supra,* 10 Cal.3d 110, 127; *Burns* v. *City Council* (1973) 31 Cal.App.3d 999, 1004-1005 [107 Cal.Rptr. 787]; *Brown* v. *City of Los Angeles* (1968) 267 Cal.App.2d 849, 850-851 [73 Cal.Rptr. 364].) *Ellis* v. *City Council* (1963) 222 Cal.App.2d 490 [35 Cal.Rptr. 317], upon which Veta relies, is distinguishable. *Ellis* held only that a building inspector was personally liable in damages for an intentional and arbitrary refusal to perform a ministerial duty (*id.,* p. 497). The opinion does not discuss the immunity provisions of the Government Code, which were not enacted until several years thereafter.

Sections 818.4 and 821.2 of the Government Code were discussed in the recent Court of Appeal case of *O'Hagan* v. *Board of Zoning Adjustment* (1974) 38 Cal.App.3d 722 [113 Cal.Rptr. 501] (hg. den.), which held the

---

[6]Indeed, this is the interpretation of the immunity provisions advanced by Veta, since it seeks to distinguish *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 127 [109 Cal.Rptr. 799, 514 P.2d 111], on the ground that in that case the cause of action for damages for denial of the building permit was not combined with a cause of action for mandamus.

sections to prevail over section 1095 of the Code of Civil Procedure. The court based its conclusion on the fact that the former are special statutes which take precedence over the general provisions of the latter, as well as upon the ground that the immunity provisions could be easily evaded if section 1095 were interpreted to limit their application.

Thus, the trial court erred in overruling the Commission's demurrer to the first cause of action seeking damages because of the Commission's refusal to issue the permit. The Commission also demurred specially on two grounds relating to the claim for damages, asserting a misjoinder or defect of parties and a failure to separately state the causes of action for damages and for mandate. Because we have concluded that the first cause of action is valid only insofar as Veta prays for a writ of mandate, these special demurrers need not be considered.

### Second Cause of Action

The second cause of action alleges that the Commission has a mandatory duty to issue a permit to Veta, based upon the showing made at the hearing, or to affirm as final the permit issued by the regional commission, or to find that Veta has a vested right to develop its property without a permit.

Veta seeks to invoke the "traditional mandamus" provisions of section 1085 of the Code of Civil Procedure in this count. (See fn. 4, *ante.*) That section may be employed to compel the performance of a duty which is purely ministerial in character; it cannot be applied to control discretion as to a matter lawfully entrusted to the Commission. (*City & County of S. F. v. Superior Court* (1959) 53 Cal.2d 236, 244 [1 Cal.Rptr. 158, 347 P.2d 294]; *Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 326 [253 P.2d 659]; *Gong* v. *City of Fremont* (1967) 250 Cal.App.2d 568, 572 [58 Cal.Rptr. 664].)[7]

Even the most cursory examination of the Act reveals that determination of whether an applicant qualifies for a permit is entrusted to the Commission's discretion. Thus, a permit may not issue unless the Commission finds, for example, that the development will not have any substantial adverse environmental or ecological effect (Pub. Resources Code,

---

[7]There is no merit in Veta's assertion that the Act itself authorizes a proceeding under section 1085 of the Code of Civil Procedure. Section 27424 of the Public Resources Code merely permits an applicant to avail himself of a writ of mandate to review decisions of the Commission, in accordance with chapter 2, title 1, part 3, of the Code of Civil Procedure, which deals with the writ of mandate. Nothing in section 27424 purports to allow a litigant to invoke the provisions of section 1085 of the Code of Civil Procedure where, as here, the duties of the Commission cannot be characterized as ministerial.

§ 27402; subd. (a)) or irreversibly commit coastal zone resources, and that the proposed development will enhance the environment of the coastal zone (§§ 27402, subd. (b), 27302, subds. (a), (d)). The application of these factors requires the Commission to undertake a delicate balancing of the effect of each proposed development upon the environment of the coast as a predicate to the issuance of a permit. This process is manifestly inconsistent with an assertion that the Commission's functions in this regard are purely ministerial in character. Thus, the trial court should have sustained the general demurrer insofar as the petition seeks to compel the Commission to issue the permit.

■ Nor is the writ available to compel the Commission to "affirm as final the permit . . . approved" by the regional commission. Veta bases its claim in this respect upon its allegations that the Commission had no jurisdiction to hear the appeal from the determination of the regional commission. Veta is in effect seeking to compel the Commission to perform an act which it alleges the Commission had no jurisdiction to perform. That is, if the Commission had no jurisdiction to hear the appeal from the regional commission because, inter alia, the appeal was not timely filed, there obviously is no jurisdiction in the Commission to "affirm" the approval of the permit by the regional commission. The appropriate remedy for acts of the Commission purportedly in excess of its jurisdiction is a writ of mandate to review the decision of the Commission; as alleged in the first cause of action. Indeed, excess of jurisdiction is one of the grounds for review specifically alluded to in section 1094.5, subdivision (b).

■ Finally, Veta seeks in the second cause of action to compel the Commission to "affirm" that it has a vested right to develop its property without a permit. Although Veta asserts that the Commission had the duty to recognize its vested right, it admittedly did not seek such determination from the Commission but, rather, elected to apply for a permit. The Commission has enacted detailed regulations and procedures for the determination of claims of exemption on the ground of vested rights. (Cal. Admin. Code, tit. 14, § 13001 et seq.) Since Veta elected not to avail itself of these procedures it cannot now seek by mandate to compel the Commission to "affirm" its claim of exemption.[8]

*Third Cause of Action*

The third cause of action seeks the same remedies as the second but

---

[8]Veta's assertion that it may obtain a judicial declaration that it is exempt from the permit requirement without first seeking a determination from the Commission to that effect will be discussed in connection with the third cause of action.

via a declaratory relief route rather than mandate. Thus, Veta asks the court to declare that it is entitled to a permit from the Commission or that it has a valid permit from the regional commission, or a vested right to proceed with its development.

■ It is settled that an action for declaratory relief is not appropriate to review an administrative decision. (*Selby Realty Co.* v. *City of San Buenaventura* (1973) *supra*, 10 Cal.3d 110, 127; *Hostetter* v. *Alderson* (1952) 38 Cal.2d 499, 500 [241 P.2d 230]; *Escrow Owners Assn. Inc.* v. *Taft Allen, Inc.* (1967) 252 Cal.App.2d 506, 510 [60 Cal.Rptr. 755]; *Floresta, Inc.* v. *City Council* (1961) 190 Cal.App.2d 599, 612 [12 Cal. Rptr. 182].) Veta's attempt in the third cause of action to obtain review of the Commission's denial of the permit by means of declaratory relief is improper, and the demurrer should have been sustained insofar as Veta alleged that it met the requirements for issuance of the permit and that the Commission lacked jurisdiction to hear the appeal from the decision of the regional commission.

■ Veta also seeks a declaration that it has a vested right to proceed with its development without a permit, and that the Act is not applicable to its project. Under section 1060 of the Code of Civil Procedure an action in declaratory relief must be based upon an "actual controversy" between the parties. Although Veta alleges the existence of such a controversy with respect to whether it has acquired a vested right, it is clear from the face of the petition that it has not sought a vested rights determination from the Commission nor been denied such a determination. Under these circumstances, we conclude that Veta has not alleged an actual controversy within the meaning of section 1060 of the Code of Civil Procedure so as to entitle it to declaratory relief.

■ Since the case will be remanded to the trial court for further proceedings, it is appropriate to discuss, for the guidance of the trial court on remand, Veta's contention that it is not required to obtain a determination from the Commission that its rights are vested as a predicate to seeking such a declaration from the court, and that the Commission has exceeded its powers in adopting regulations for determining claims of exemption. Veta asserts that the Commission has no power to determine whether a developer has acquired a vested right to develop its property without a permit, because that power is not expressly granted to the Commission by the Act and that, since the concept of vested rights has its roots in the Constitution, only courts may determine whether a developer has acquired a vested right.

We do not agree. The Act empowers the Commission to "[A]dopt any regulations or take any action it deems reasonable and necessary" to carry out its provisions. (Pub. Resources Code, § 27240.) This grant of authority is sufficiently broad to empower the Commission to adopt the regulations in question, since among the provisions of the Act is section 27404, which sets forth standards for guidance in determining the acquisition of vested rights. Moreover, the mere fact that the concept of vested rights is rooted in the Constitution does not deprive the Commission of the power to make the initial determination whether a developer qualifies for an exemption, so long as appropriate judicial review of the Commission's determination is provided. The Commission has passed upon a large number of vested rights claims, and orderly procedure would seem to require that it be afforded the opportunity to make this determination as a predicate to an action for declaratory relief.

*Fourth Cause of Action.*

The fourth cause of action seeks a declaration that the Act is unconstitutional in various respects, and that it was unconstitutionally applied to Veta.

The Commission's general demurrer to this count was based primarily upon the failure of the petition to allege that the constitutionality of the Act had been challenged in the proceedings before the Commission. The Commission cites *Walker* v. *Munro* (1960) 178 Cal.App.2d 67, 74-75 [2 Cal.Rptr. 737], in support of its assertion that the doctrine of exhaustion of administrative remedies is applicable to a claim of unconstitutionality, and that a litigant may not challenge the constitutionality of a statute under which an administrative agency functions unless he has first raised the constitutional issue before the administrative agency.

*Walker* lends some support to the contention of the Commission on a theory a charge that the statute which the agency is seeking to enforce is unconstitutional " 'goes to the very jurisdiction of the administrative officer or body to entertain the proceeding and hence is a matter which he or it must consider and decide at the outset of the proceeding.' " (*Id.* at p. 74.) However, a year after *Walker* was decided, in *Flores* v. *Los Angeles Turf Club* (1961) 55 Cal.2d 736 [13 Cal.Rptr. 201, 361 P.2d 921], this court considered the constitutionality of the statute there in question, requiring only that the litigant exhaust his administrative remedies as to other issues involved in the case.

The federal cases are not clear as to the prevailing rule with regard to whether a litigant must exhaust his administrative remedies before

presenting his claim of unconstitutionality to a court. (See 3 Davis, Administrative Law (1958) § 20.04; Jaffe, Judicial Control of Administrative Action (1965) pp. 438-440.) Both Davis and Jaffe are critical of the rule enunciated in *Walker*, on the ground that, since an administrative agency is not the appropriate forum in which to challenge the constitutionality of the basic statute under which it operates, there seems little reason to require a litigant to raise the constitutional issue in proceedings before the agency as a condition of raising that issue in the courts. It would be heroic indeed to compel a party to appear before an administrative body to challenge its very existence and to expect a dispassionate hearing before its preponderantly lay membership on the constitutionality of the statute establishing its status and functions. ■ We conclude that Veta should be permitted to challenge the constitutionality of the Act in this proceeding even though it failed to make such a challenge before the Commission at the time it applied for a permit.

■ The Commission also asserts that declaratory relief is not the appropriate remedy to challenge the constitutionality of the Act. This assertion is without merit; a number of cases have held that declaratory relief is available to challenge the constitutionality of ordinances. (See, e.g., *McCarthy* v. *City of Manhattan Beach* (1953) 41 Cal.2d 879, 882 [264 P.2d 932]; *Floresta, Inc.* v. *City Council* (1961) *supra*, 190 Cal.App. 2d 599, 612.) However, insofar as the fourth cause of action seeks to challenge the application of the Act to Veta, the Commission is correct that Veta is essentially seeking to review the validity of an administrative action and, as discussed above, such review is properly brought under the provisions of section 1094.5 of the Code of Civil Procedure rather than by means of declaratory relief.

Thus we hold that the trial court properly overruled the Commission's demurrer insofar as the fourth cause of action seeks a declaration that the Act is facially unconstitutional. In other respects, the demurrer to the fourth cause of action should have been sustained.[9]

Veta argues the merits of its claim of unconstitutionality. Since we are called upon at this stage of the proceedings only to determine whether

---

[9]Another ground of the demurrer was that the allegations of the fourth cause of action were in the nature of conclusions, and did not explain the factual basis of the asserted unconstitutionality. However, the fourth cause of action appears to allege the factual basis of Veta's claim of unconstitutionality in sufficient detail. For example, it is alleged that the requirement that a permit be obtained for development within 1,000 yards of the coast (Pub. Resources Code, § 27104) is arbitrary, and that the Act denies Veta equal protection of the law because voters in each county are not equally represented on the Commission.

the petition states causes of action, it is inappropriate to now determine the issue of constitutionality.

### Fifth Cause of Action

The fifth cause of action seeks an injunction to prohibit the Commission from expending public funds to administer the Act. The considerations relevant to the ruling on the general demurrer to the fifth cause of action are similar to those set forth above with regard to the fourth. For the same reasons the demurrer to the fifth cause of action was also properly overruled.[10]

### Sixth Cause of Action

The sixth cause of action sounds in inverse condemnation, and Veta seeks damages in the sum of $8,815,250 for an alleged unconstitutional taking of its property.

It is first alleged that Veta had a vested right to develop its property, and that the Commission invaded and appropriated "said right" by unlawfully applying the provisions of the Act to the property. These allegations are obviously deficient. It is evident from the face of the petition that Veta itself invoked the application of the Act to its development by applying to the Commission for a permit; and that it did not seek a declaration from the Commission that it had a vested right to proceed without a permit. Under these circumstances, the fact that the Commission denied the permit cannot constitute the basis for an action in inverse condemnation on the ground that the Commission "invaded and appropriated" Veta's vested rights.

The primary basis of the sixth cause of action is that Veta's application for a permit was denied in order that its land would "remain undeveloped and devoted to, and held for, public use as open space land." Veta alleges that the denial of the permit on that ground constitutes a taking or damaging of its land, either permanently or temporarily, without compensation. We must, of course, accept as true for the purposes

---

[10]The demurrer to the fifth cause of action was also made on the ground that Veta failed to allege the factual basis upon which the Commission "wrongfully and unlawfully" expended public money. However, the fifth cause of action incorporates the allegations of the fourth, and when considered together, the allegations appear sufficient as against a general demurrer to allege the unconstitutionality of the Act as the basis for the claim of wrongful and unlawful expenditures.

of the general demurrer, Veta's assertion as to the reason for the denial of the permit.[11]

In order to decide if the sixth count states a cause of action for inverse condemnation, we must examine the purposes of the Act as well as the effect of the Commission's action upon Veta's property. The Act declares that the coastal zone is a valuable resource belonging to all the people, that its permanent protection is a paramount concern to the citizens of the state, and that in order to protect this valuable resource it is necessary to study the coastal zone, prepare a comprehensive plan for its orderly, long-range conservation and management, and insure that any development which occurs in the permit area during the study and planning period will be consistent with the objectives of the Act. (Pub. Resources Code, § 27001.) The Commission is enjoined to submit such a plan to the Legislature by December 1, 1975. (Pub. Resources Code, §§ 27300, 27320.) Among the objectives of the coastal zone plan are the avoidance of irreversible and irretrievable commitments of coastal zone resources. (Pub. Resources Code, § 27302, subd. (d).) In order to assure that the purposes of the Act are not impaired during the period in which the plan is in the process of formulation, those who seek to perform any development within the permit area are, with certain exceptions, required to seek a permit from the Commission. (Pub. Resources Code, §§ 27400-27405.) However, the Act, including the permit requirement, is automatically repealed by its own terms on the 91st day after the final adjournment of the 1976 Regular Session of the Legislature. (Pub. Resources Code, § 27650.)

Thus, the requirement for a permit is an interim measure to assure that developments in the coastal zone are consistent with the objectives of the Act so that priceless coastal resources are not irreversibly committed to uses which would be inconsistent with the plan ultimately developed.

The situation involved in the present case is virtually indistinguishable from *Candlestick Properties, Inc.* v. *San Francisco Bay Conservation etc. Com.* (1970) 11 Cal.App.3d 557, 570-572 [89 Cal.Rptr. 897]. In that

---

[11]The Commission asserts that Veta was denied a building permit for a particular development only, and that it is free to submit an application for a modified project for the Commission's consideration. A reporter's transcript of the proceedings before the Commission which led to the denial of the permit is incorporated in the complaint by reference. An examination of the transcript throws considerable doubt upon Veta's allegation that the permit was denied in order to maintain the land as open space. Nevertheless, as noted above, we must assume for the purposes of the demurrer that the allegations of the petition are true.

case the plaintiff alleged a taking of its property based upon the denial by the Bay Conservation and Development Commission of a permit to fill a parcel of land in San Francisco Bay. It was alleged that the land had no value except as fill. The purpose of the legislation involved in *Candlestick* is strikingly similar to the rationale underlying the Act. The Legislature declared that the bay is the most valuable natural resource in the region, that it was threatened by haphazard filling, and that in order to protect it during the formulation of a conservation and development plan, the Bay Conservation and Development Commission must have the power to regulate any proposed project which involves placing fill in the bay. (Gov. Code, §§ 66600-66604.) The Court of Appeal held that the denial of a permit in the interim before the completion of the plan did not constitute an unconstitutional taking and that the restrictions placed upon the land were a valid exercise of the police power.

Nor can the present case be distinguished in principle from numerous authorities upholding the validity of interim zoning ordinances. The leading authority is *Miller* v. *Board of Public Works* (1925) 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479]. There, the plaintiff not only applied for but was issued a permit to construct four-family dwellings in a residence district. The permit was revoked after the city council passed an ordinance prohibiting the construction of such units on the ground that the city was contemplating a comprehensive zoning plan covering the entire city. The court, in upholding the revocation, held that a zoning plan of the extent contemplated would take considerable time to develop, and that it would be destructive of the plan ultimately adopted if, "during the period of its incubation, parties seeking to evade the operation thereof should be permitted to enter upon a course of construction which might progress so far as to defeat in whole or in part the ultimate execution of the plan." (195 Cal. at p. 496.)

This principle has been followed in numerous cases both in this state and in other jurisdictions,[12] upholding temporary measures to preserve the status quo pending adoption of a comprehensive zoning plan. Thus, courts have refused to invalidate a freeze on building permits pending adoption of a zoning plan (*Hunter* v. *Adams* (1960) 180 Cal.App.2d 511 [4 Cal.Rptr. 776]) or a proscription of subdivision (*Metro Realty* v. *County of El Dorado* (1963) 222 Cal.App.2d 508 [35 Cal.Rptr. 480]),

[12]See, e.g., *Downham* v. *City Council of Alexandria* (E.D.Va. 1932) 58 F.2d 784; *Fowler* v. *Obier* (1928) 224 Ky. 742 [7 S.W.2d 219]; *Campana* v. *Clark Tp.* (1964) 82 N.J.Super. 392 [197 A.2d 711]; *McCurley* v. *City of El Reno* (1929) 138 Okla. 92 [280 P. 467]; *City of Dallas* v. *Meserole* (Tex.Civ.App. 1941) 155 S.W.2d 1019; 1 Anderson, American Law of Zoning (1968) § 5.15, p. 275.

and a requirement for a special permit pending the completion of studies preparatory to the adoption of a zoning ordinance has also been held to be proper (*Anderson* v. *City Council* (1964) 229 Cal.App.2d 79 [40 Cal. Rptr. 41]). Generally these decisions have upheld the ordinances as a proper exercise of the police power.

It is true that the Act is not an interim zoning measure since it does not zone any property but merely requires the Commission to formulate a coastal zone plan for submission to the Legislature. Nevertheless, the cases cited above demonstrate that even more severe restrictions on the use of private property than those provided by the Act have been supported as a valid exercise of the police power pending the adoption of a comprehensive zoning ordinance (e.g., a moratorium on the issuance of building permits in *Hunter* v. *Adams* (1960) *supra*, 180 Cal.App.2d 511).

In view of the foregoing authorities, denial of a building permit to Veta on the ground that the land it proposes to develop may ultimately be designated for public use in the coastal zone plan to be adopted by the Commission by December 1975, does not amount at this time to a taking of property for public use without compensation. The trial court therefore erred in overruling the general demurrer to the sixth cause of action.

*Pleading Summary*

We conclude that Veta has not stated a cause of action except insofar as it seeks administrative mandate to review the denial of the permit (first cause of action), a declaration that the Act is unconstitutional (fourth cause of action), and an injunction to prevent the Commission from expending public funds to administer the Act (fifth cause of action).

There remain for our consideration demurrers alleging that the State of California and two Commission employees were misjoined as respondents in the first cause of action, and that the petition failed to state a cause of action as to the employees or the state insofar as the fourth and fifth causes of action were concerned.

These demurrers should also have been sustained, as no relief is available against either the state or the two employees. Insofar as Veta seeks a review of the Commission's denial of its permit, only the Commission and its members may set aside the decision. The fourth and fifth causes of action both relate to the constitutionality of the Act on its face, and the petition contains no allegations establishing any right to declaratory relief against the state (as distinguished from the Commission acting as its agent) or against the Commission employees in this regard.

## The Interrogatories

 The trial court overruled the Commission's objections to the interrogatories propounded by Veta and ordered the Commission to answer. The Commission claims that discovery cannot lead to the production of admissible evidence and that, therefore, the trial court's ruling was erroneous.

At the outset, it should be observed that only those interrogatories are proper which relate to the first cause of action for review of the Commission's decision under section 1094.5 of the Code of Civil Procedure. Although we have held that the fourth and fifth counts, in which Veta challenges the constitutionality of the Act on its face, also state causes of action, the interrogatories directed to these causes are not proper. The objections to these interrogatories should have been sustained because they seek to determine opinions of the Commission regarding the constitutionality of the Act, and such opinions have no relevance whatever to the purely legal problem of determining the validity of the Act on its face.[13]

Limiting our inquiry to those interrogatories which are relevant to a review under section 1094.5 of the Code of Civil Procedure, we note that the Commission asserts if the independent judgment test is applicable to review the Commission's determination, then under section 1094.5, subdivision (d),[14] discovery would be limited to relevant evidence which, in the exercise of reasonable diligence, Veta could not have produced, or which was improperly excluded at the hearing. The Commission asserts that Veta did not make the showing required by this provision and that, therefore, even if the independent judgment test were to be applied in reviewing its determination no discovery would be proper. Moreover, it is asserted, if the substantial evidence test is applied no discovery whatever is appropriate.

---

[13]For example, interrogatory 54 asks: "What is each and every reason in support of the classification of 1000 yards from the ·mean high tide line of the Pacific Ocean as the dividing line for application of the . . . Act concerning the issuance of permits?" Interrogatory 55: "What is every State purpose to be furthered by the classification of 1000 yards in the· . . . Act?" Interrogatory 56: "What is every compelling interest of the State . . . which justifies and supports the . . . Act?"

[14]"Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced. or which was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (e) of this section remanding the case to be reconsidered in the light of such evidence; or, in cases in which the court is authorized by law to .exercise its independent judgment on the evidence, the court may admit such evidence at the hearing on the writ without remanding the case."

We agree that in reviewing the Commission's determination the trial court is confined to the record before the Commission unless Veta can show that it possesses evidence not presented to the Commission which it could not have produced in the exercise of reasonable diligence or unless relevant evidence was improperly excluded at the administrative hearing. However, in our view, this rule applies whether the independent judgment test or the substantial evidence test is employed to review the Commission's determination. Subdivision (d) of section 1094.5 impliedly recognizes as much, and the sole authority cited by the Commission for a contrary view does not, in our opinion, support the Commission's position that even if Veta met the standards set forth in subdivision (d) of section 1094.5, discovery would not lie if the substantial evidence test were employed.[15] Thus, to the extent that Veta can justify the interrogatories under that provision, the Commission must file answers to them.

Veta asserts that subdivision (d) of section 1094.5 does not limit its right to discovery because of the nature of its attack on the Commission's decision. It is claimed that, while that provision is applicable to the issue whether the evidence is sufficient to support the findings of an administrative agency, Veta is attempting to establish that the Commission denied it a fair hearing by receiving secret testimony from its staff prior to the hearing and prejudging the application on the basis of such improperly received evidence, and that the Commission failed to consider and examine certain documents presented by Veta. Where such allegations are made, claims Veta, discovery must be allowed to enable a litigant to determine the basis of the Commission's action.

In *United States* v. *Morgan* (1941) 313 U.S. 409, 422 [85 L.Ed. 1429, 1435, 61 S.Ct. 999], it was held improper to examine the Secretary of Agriculture with regard to whether and to what extent he had read and considered certain evidence and exhibits prior to making a rate order. The opinion states, "The proceeding before the Secretary 'has a quality

---

[15]*Beverly Hills Fed. S. & L. Assn.* v. *Superior Court* (1968) 259 Cal.App.2d 306, 324 [66 Cal.Rptr. 183], is relied upon by the Commission in support of its assertion. In that case the "substantial evidence" test was employed, and the court stated that in reviewing the administrative decision it was confined to a review of the record before the agency. Moreover, it was held, even if the court could consider evidence dehors the record, such evidence would not be relevant because if the additional evidence supported the agency's determination it would be cumulative, whereas if it contradicted evidence introduced at the hearing, the court would be compelled to disregard it since conflicts in the evidence must be decided in favor of the agency's decision. However, in making these statements the court was not specifically addressing itself to a claim that relevant evidence was excluded in the administrative hearing or that the petitioner possessed evidence which he could not have produced at the hearing by the exercise of reasonable diligence.

resembling that of a judicial proceeding.' . . . Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held . . . that 'it was not the function of the court to probe the mental processes of the Secretary.' . . . Just as a judge cannot be subjected to such a scrutiny, . . . so the integrity of the administrative process must be equally respected. . . .'"

The rule of *Morgan* is generally followed by the states (see 2 Davis, Administrative Law (1958) § 11.05, p. 62), and was recently applied in *State of California* v. *Superior Court* (1971) 16 Cal.App.3d 87, 94-95 [93 Cal.Rptr. 663], in which it was strongly doubted that interrogatories dealing with the mental processes of the director of health care services in arriving at his decision were proper.

 To the extent, therefore, that the interrogatories seek to determine what material the Commission read and relied upon in reaching its determination and to the extent that they seek to probe the mental processes of the Commission, the trial court erred in overruling the Commission's objections thereto. That some of the interrogatories fall within the prohibited range is clear. The parties make specific reference only to interrogatories 70 to 75, which seek to determine whether the Commission was "aware" of certain "facts" at the time of the hearing. Since *Morgan* prohibits an examination into the question of what evidence an administrator considered in reaching a decision, these questions were improper.

We do not consider the remaining interrogatories, which number almost 300 separate questions and subquestions, but vacate the trial court's order granting Veta's motion to compel answers and direct the court to reconsider the Commission's objections to the interrogatories under the principles set forth above.

*Conclusion*

Let a peremptory writ of mandate issue commanding respondent superior court to vacate its order of January 14, 1974, and to make a new order in conformity with the views herein expressed (1) sustaining in part and overruling in part the demurrers filed by petitioners and (2) reconsidering petitioners' objections to the interrogatories.

Wright, C. J., McComb, J., Tobriner, J., Burke, J., Sullivan, J., and Clark, J., concurred.

The petition of the real parties in interest for a rehearing was denied September 19, 1974.