[Civ. No. 44395. First Dist., Div. Four. Apr. 24, 1979.]

ALAN C. GUILBERT, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Respondents.

**COUNSEL**

Andrew Thomas Sinclair for Plaintiff and Appellant.

Donald L. Reidhaar and Allen B. Wagner for Defendants and Respondents.

## Opinion

POCHÉ, J.—Alan C. Guilbert appeals from a judgment denying his petition for writ of mandate and request for declaratory relief against the Regents of the University of California, David Saxon and Roger E. Batzel. The central issue on appeal is whether a letter written by the president of the university to Guilbert's supervisor following a disciplinary hearing denied him due process of law.

I

Guilbert was and is a regular, full-time protective service employee of the University of California, serving at the Lawrence Livermore Laboratory. On August 28, 1976, Guilbert failed to report for an overtime assignment, believing that he had achieved a prior oral understanding with his supervisor that he would not have to work this shift.

On August 30, 1976, Guilbert was placed on disciplinary suspension for two weeks without pay for his failure to accept the overtime assignment. Guilbert then filed a grievance pursuant to University Staff Personnel Policy Rule (hereafter SPP) section 280. A full hearing was held before the university hearing commitee, during which the committee heard the sworn testimony of several witnesses and received documentary evidence. The committee found that there was no evidence which would sustain the charges in the grievance and recommended to the laboratory director that the two-week suspension be sustained. The director, Dr. Roger E. Batzel, accepted the committee's report and recommendation without modification.

Guilbert appealed this decision to the president of the university, David S. Saxon, pursuant to SPP section 280.8, subdivision (c). The foregoing section provides that "An employee of a campus may petition that the President review the records, reports, and the decision, if . . . (c) an interpretation of the decision is necessary."

On May 24, 1977, President Saxon replied by letter to Guilbert's attorney, stating in part: "Your petition on behalf of Alan C. Guilbert is based on the contention that 'an interpretation of the decision is necessary.' Director Batzel's decision was to accept the committee's recommendation that the grievance, which protested a two-week suspension without pay, be denied. I find this clear and requiring no interpretation. . . . I find that no basis has been established for Presidential review of this grievance, and therefore I deny your petition."

On the same day, President Saxon wrote the following letter to Director Batzel: "I have today sustained your decision in the grievance of Alan C. Guilbert and attach a copy of my letter to his attorney, Mr. Sinclair. In reviewing the material I note Mr. Guilbert contended that he was led to believe there was a possibility he would not have to work on the particular day in question. The hearing committee's report does not resolve that contention in a very satisfying way. Given the lack of clarity on this issue, the penalty of two weeks' suspension without pay seems excessive."

Guilbert was not sent a copy of this letter, although it was later provided to him upon request. In response to President Saxon's letter, Batzel ordered that Guilbert's suspension be reduced from two weeks to one week. A check for one week's pay was thereafter forwarded to Guilbert.

On June 28, 1977, Guilbert filed a petition for writ of mandate in superior court, requesting that the university's decision be set aside. The petition was later amended to include a request for a declaratory judgment. After a hearing on the matter, the trial court found no basis for overturning the decision on any of the grounds enumerated in Code of Civil Procedure section 1094.5 and rendered judgment denying Guilbert all relief.

Guilbert appeals.

## II

A. Did the letter from President Saxon to Director Batzel constitute a basis for overturning the university's decision?

The central focus of Guilbert's appeal seems to be the May 24 communication from President Saxon to Director Batzel in which the president voiced his opinion that, in his view, "the penalty of two weeks' suspension without pay seems excessive." The thrust of Guilbert's opening brief is that this letter amounted to (1) an abuse of discretion, (2) failure to proceed in the manner required by law, or (3) the denial of a fair hearing. Guilbert's counsel contends that the president's "secret" interpretation of Director Batzel's decision did not meet the requirements of fundamental fairness in that Guilbert "was deprived of notice of the changing situation and of the opportunity to respond to it."

At the outset, we find it particularly difficult to perceive of any justification for complaint by Guilbert. The correspondence between Saxon and Batzel accrued exclusively and directly to Guilbert's benefit: as a result thereof the penalty imposed upon him was cut in half. Inasmuch as any irregularity or error in the procedure employed was favorable to him, Guilbert is precluded from asserting it as a ground for reversal: "There is a generally accepted principle that the appellant must show prejudicial error affecting his interests in order to prevail on appeal . . . and it follows that the appellate court need not and will not review errors which could not have been prejudicial to him. [¶] The clearest examples of errors nonreviewable are those which are in favor of the appellant. . . ." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 212, p. 4203; see *Rauer* v. *Nelson & Sons* (1921) 53 Cal.App. 695, 700 [200 P. 809].)

Nonetheless, Guilbert's position, even on the merits, is not well taken. Code of Civil Procedure section 1094.5 provides that the scope of inquiry in reviewing a petition for administrative mandate shall be limited to "whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." It is immediately apparent that no basis for granting the petition below existed by virtue of the third criterion, because any abuse of discretion manifested by President Saxon's letter was not prejudicial to Guilbert. The only effect of the letter was an amelioration of the discipline imposed upon him. The "fair trial" requirement is equivalent to a prescription that there be a "fair administrative hearing." (Deering, Cal. Administrative Mandamus (Cont. Ed.Bar 1966) § 5.9, p. 40.) In the case at bar, Guilbert was accorded a full administrative hearing pursuant to the university's staff personnel policy rules. He was represented by counsel, presented evidence on his

own behalf, and was permitted to call witnesses. █ █ Guilbert makes no challenge to the fairness of the hearing he received and does not attack the administrative findings or the sufficiency of the evidence to support the decision.[1]

 The suggestion that Saxon's communication to Batzel constituted an "adjudication" without notice or opportunity to respond in violation of the due process clause cannot be sustained.

In the first place, Saxon's letter to the director was not adjudicatory. President Saxon merely expressed his opinion, that upon his own review of the proceedings, the discipline imposed upon Guilbert seemed to him to be excessive. Director Batzel simply agreed with President Saxon and ordered the penalty reduced. Pursuant to SPP section 280.64 the ultimate decision-making power was vested at all times in Director Batzel.

So, the president's letter had no binding effect and the trial court properly found that it was advisory in nature.

Moreover, regardless of the nature of Saxon's letter, it cannot be seriously contended that the failure to disclose its contents to Guilbert violated the requirements of due process. Guilbert cites no authority supporting the proposition that a grievant must be notified or be allowed to respond to an interdepartmental communication between university officials. On the contrary, the cases are clear that a party is not entitled to be privy to the mental processes or reasoning by which administrative officials arrive at their decision. (*State of California* v. *Superior Court (Veta)* (1974) 12 Cal.3d 237, 257-258 [115 Cal.Rptr. 497, 524 P.2d 1281]; *United States* v. *Morgan* (1941) 313 U.S. 409 [85 L.Ed. 1429, 61 S.Ct. 999].)

 Guilbert makes the argument that the letter constituted an "ex parte communication" to Batzel, which is prohibited by law. However, the cases cited by Guilbert merely stand for the principle that it is improper for an administrative tribunal to base its decision upon *evidence* or *information* received outside the confines of the administrative hearing.

---

[1]It is noteworthy that Guilbert's failure to procure a transcript of the administrative proceedings forecloses him from making such a challenge; in the absence of a transcript, the presumption that the agency regularly performed its official duty will prevail. (Deering, *op. cit. supra,* (1977 supp.) § 13.21, p. 122; *Ward* v. *County of Riverside* (1969) 273 Cal.App.2d 353, 358 [78 Cal.Rptr. 46].)

(See e.g., *La Prade* v. *Department of Water & Power* (1945) 27 Cal.2d 47, 51-52 [162 P.2d 13].) Here, Director Batzel did not change his decision based upon any extrinsic evidence or information. Instead, he decided to mitigate the *penalty* imposed after receiving the opinion expressed to him by President Saxon as to the severity of the discipline. Further, Director Batzel's letter states that this action was taken following his own review of the case, not as an implementation of Saxon's wishes. Finally, since any reliance which Batzel placed upon the communication was favorable to Guilbert, it did not deprive him of any of his substantial rights, or render the proceedings unfair as to him. (*Beverly Hills Fed. S. & L. Assn.* v. *Superior Court* (1968) 259 Cal.App.2d 306, 323 [66 Cal.Rptr. 183].)

B. Did respondents lack jurisdiction to "reconsider" their earlier decision?

Guilbert urges that respondents acted in excess of or without jurisdiction in "reconsidering" their earlier decision to impose a two-week suspension upon him after it became final.

Initially, we must reiterate the principle that allegations of error which were favorable to the appealing party are not reviewable in this court. (6 Witkin, *op. cit. supra.*)

Assuming, however, that the issue of jurisdiction may always be raised on appeal, we conclude that Director Batzel's action was within the proper scope of his authority.

As a general rule, once the decision of an administrative agency becomes final, the agency lacks jurisdiction to alter or modify it unless provided for by statute. (Deering, *op. cit. supra,* § 5.8, p. 39.) However, as the California Supreme Court made clear in *Olive Proration etc. Com.* v. *Agri. etc. Com.* (1941) 17 Cal.2d 204 [109 P.2d 918], "Where orders which relate to what may be rather broadly defined as individual rights are concerned, the question whether the administrative agency may reverse a particular determination *depends upon the kind of power exercised in making the order* and the terms of the statute under which the power was exercised. As to the first factor, almost without exception, courts have held that the determination of an administrative agency as to the *existence of a fact or status* which is based upon a present or past group of facts, may not thereafter be altered or modified." (*Id.,* at p. 209, italics added.)

It is clear that the purpose behind precluding a redetermination by an administrative agency as to a fact or status is to protect the grievant's rights to a decision based upon the evidence and to prevent a redetermination of his status without due process. Where, as here, the administrative "power exercised" consists merely of reducing or mitigating the punishment imposed, none of these rights are impinged upon and the purpose behind the rule ceases to exist. Consequently, such action is permissible and not beyond the jurisdiction of the administrative tribunal.

Additionally, since the action of Director Batzel did not alter or modify any "fact" or "status" previously determined but resulted only in the refund to him of one week's salary, such action did not constitute a reopening of the proceedings.

C. Was declaratory relief improperly denied?

Guilbert next contends that the trial court abused its discretion in denying his request for declaratory relief.

It is well settled that declaratory relief is not an appropriate method for review of an administrative order (*Triangle Ranch, Inc.* v. *Union Oil Co.* (1955) 135 Cal.App.2d 428, 434-435 [287 P.2d 537]); rather, administrative mandamus is the proper remedy. (*Hostetter* v. *Alderson* (1952) 38 Cal.2d 499, 500 [241 P.2d 230]; Deering, *op. cit. supra,* § 2.10, p. 19.)

Guilbert acknowledges the foregoing rule, but contends that a cause of action for declaratory relief may be joined with a petition for writ of mandate. None of the cases cited by Guilbert, however, may be read as standing for the proposition that declaratory relief may be pursued where an administrative mandamus action provides an adequate remedy for resolving the issues raised. (See *Savelli* v. *Board of Medical Examiners* (1964) 229 Cal.App.2d 124, 142 [40 Cal.Rptr. 171].)

In addition, Guilbert's complaint reveals no issue susceptible of resolution by declaratory relief. All of the issues ostensibly presented to the court for "declaratory adjudication" are either totally irrelevant or raise errors specifically appropriate to relief under Code of Civil Procedure section 1094.5.[2]

---

[2]These "issues" are summarized in appellant's opening brief as follows: "(1) that respondents were exercising adjudicatory powers in deciding [Guilbert's] grievance; (2)

"[W]hether a determination is proper in an action for declaratory relief is a matter committed to the discretion of the trial court, and the exercise of that discretion will not be disturbed on appeal unless a clear abuse thereof is shown." (*Bess* v. *Park* (1955) 132 Cal.App.2d 49, 52 [281 P.2d 556].) Where the court believes that more effective relief can be granted through another procedure, it will be justified in refusing a request for declaratory relief. (*Jones* v. *Robertson* (1947) 79 Cal.App.2d 813, 819-820 [180 P.2d 929].)

The trial court's refusal to grant Guilbert declaratory relief was entirely appropriate and clearly did not constitute an abuse of discretion.

D. Did the trial court's discovery order constitute an abuse of discretion?

During the pendency of the mandamus action, Guilbert served interrogatories directed to President Saxon. Following the responses received, Guilbert moved to compel answers to several of the interrogatories. The trial court denied the motion. Guilbert now challenges this ruling as to the following questions: INTERROGATORY NO. 2: "Did you discuss this matter with Roger E. Batzel at any time? [¶] a) If so, state the approximate date of the conversation and the contents of the conversation as best you remember them.'' INTERROGATORY NO. 10: "Is it your understanding that you are exercising adjudicatory powers in deciding grievances such as that of Mr. Guilbert?" INTERROGATORY NO. 11: "If your answer to Item 10 is affirmative, answer the following: Do you believe that there are any constraints on your exercise of these powers other than established University policy?"

In *City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768 [122 Cal.Rptr. 543, 537 P.2d 375], the California Supreme Court stated that "in an action for administrative mandamus an order compelling discovery must rest upon a showing that such discovery is reasonably calculated to lead to evidence admissible under Code of Civil Procedure section

---

that Director Batzel's decision incorporated the findings and recommendations of the hearing committee; (3) that President Saxon's decision of May 24, 1977, was the final agency decision; (4) that the entire process provided by SPP 280 is an exercise of the adjudicatory function of the agency; (5) that the *ex parte* communication was a prejudicial abuse of discretion, without or in excess of jurisdiction and a denial of fair trial; and (6) that Director Batzel's modification of [Guilbert's] suspension was without or in excess of jurisdiction."

1094.5, subdivision (d). This section limits the admission of evidence additional to the administrative record to 'relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing. . . .' " (*Id.,* at pp. 774-775, fn. omitted.) ▮ The court also reiterated its ruling in *State of California* v. *Superior Court (Veta), supra,* 12 Cal.3d 237, that the mental processes of an administrator and the evidence he considered in reaching his decision are not discoverable in mandamus proceedings. (14 Cal.3d at p. 777.)

▮ The interrogatories at bar fail to meet the requirements set forth in *Fairfield.* Saxon's "understanding" as to whether he was exercising adjudicatory powers or his "belief" as to statutory constraints on the exercise of his powers are totally irrelevant to the issues of whether respondents granted Guilbert a fair trial, abused their discretion or exceeded their jurisdiction. (Code Civ. Proc., § 1094.5, subd. (c).) Moreover, these questions call for legal conclusions. The answers would therefore be clearly inadmissible at trial. (See Witkin, Cal. Evidence (1966) § 405, pp. 363-364.)

Finally, all three interrogatories seek to probe the prohibited areas of an administrator's reasoning or what evidence the administrator relied upon in reaching a decision. (*Fairfield, supra,* at p. 777.) Guilbert argues that the interrogatories could establish that Saxon received ex parte communications and thus denied him a fair hearing. However, the rule against discovery of an administrator's deliberation processes cannot be overcome by a bare allegation that evidence was received outside the record. (*State of California (Veta), supra,* 12 Cal.3d at pp. 257-258; *Board of Dental Examiners* v. *Superior Court* (1976) 55 Cal.App.3d 811, 814 [127 Cal.Rptr. 865].) And, as shown above, any such conversation would not constitute the type of extrinsic evidence which is proscribed under California law.

The denial of discovery was not an abuse of discretion.

The judgment is affirmed.

Caldecott, P. J., and Christian, J., concurred.

A petition for a rehearing was denied May 22, 1979, and appellant's petition for a hearing by the Supreme Court was denied July 19, 1979. Newman, J., was of the opinion that the petition should be granted.