[No. A019496. First Dist., Div. Two. Jan. 21, 1986.]

JOSEPH W. WELCH, JR., Plaintiff and Respondent, v.
ROBERT BODEMAN, as Director, etc., Defendant and Appellant.

COUNSEL

Theodore R. Bresler, City Attorney, for Defendant and Appellant.

Corey, Orton & Luzaich and Rosemary Pfeiffer for Plaintiff and Respondent.

OPINION

**ROUSE, J.**—Defendant, Robert Bodeman, the Director of Finance of the City of San Bruno, appeals from a judgment which granted plaintiff, Joseph Welch, a peremptory writ of mandate commanding defendant to process plaintiff's application for a business license under section 7-1 of the San Bruno City Code as it read on January 29, 1982. The judgment also mandated the City of San Bruno "to provide the process embodied in the former Section 7-1."

This action was commenced on May 14, 1982, when plaintiff filed a verified mandamus petition against a single defendant: Robert Bodeman, the Director of Finance of the City of San Bruno (hereafter Director of Fi-

nance). The petition failed to name, as a party defendant, either the city itself, the city council, the city planning commission or any other employee or agent of the city. Reduced to its essence, the petition alleged that, in 1981, plaintiff owned certain real property which was located within the City of San Bruno and which was zoned in such a manner that under the city zoning ordinance then in effect, plaintiff was entitled to operate a video game center on the property "as an allowed use without a Use Permit." Plaintiff further alleged that, in late November 1981, he applied to the business license clerk in the Department of Finance of the City of San Bruno for a business license to operate a video game center on his property. However, plaintiff was informed that no such business license would be issued until plaintiff had obtained a use permit from the city's Department of Planning and Building. Plaintiff's mandamus petition alleged that he then obtained an application for a use permit, and that, on January 29, 1982, he filed that application, accompanied by the required fees, with the Department of Planning and Building. Plaintiff alleged that he was then advised that it was necessary that his use permit application be reviewed and approved by the city's planning commission. On February 16, 1982, the planning commission denied plaintiff's application on the grounds, among others, that the use applied for would be detrimental to the health, safety, morals, comfort and general welfare of persons living or working in the neighborhood of the proposed use and that said use would also cause traffic, noise and litter problems. This decision by the planning commission was allegedly based upon section 27.8 of the city code, a provision requiring that a use permit be obtained for such activities as open air theaters, race tracks, "private recreation centers or other similar establishments involving large assemblages of people . . . ." Plaintiff appealed the planning commission's decision to the city council, which upheld that decision on March 8, 1982.

Plaintiff's mandamus petition further alleged that while his application for a use permit was pending, the city introduced and adopted a new ordinance, No. 1394, which provided for the regulation and licensing of such activities as an "amusement game center," which was defined as a public place of amusement or business in which three or more amusement machines were installed. This new ordinance became effective on January 14, 1981. On March 18, 1982, after the city council had upheld the planning commission's denial of plaintiff's application for a use permit, plaintiff returned to the planning commission and asserted that at the time of his original application for a license to operate a video game center, he was not required to obtain a use permit, but had an absolute right to conduct such an activity upon his property upon payment of the required business license fee. The planning commission denied this application on May 3, 1982, and the city council upheld the planning commission's decision on May 10, 1982.

In his mandamus petition plaintiff alleged that, on the date when he first applied for a business license to operate a video game center on his property, there was no city ordinance in effect which required him to obtain a use permit in order to engage in such an activity. Also, he denied that the new ordinance, which had been adopted while his application was pending, could validly be applied to him. He prayed for an alternative writ of mandate commanding defendant Director of Finance of the City of San Bruno to either issue him the business license applied for or appear and show cause why he should not be ordered to do so.

In the points and authorities filed in support of his mandamus action, plaintiff based his petition upon Code of Civil Procedure section 1085, which authorizes the use of mandamus to compel the performance of an act "which the law specifically enjoins, as a duty resulting from an office, trust, or station . . . ."

Following the issuance of an alternative writ of mandate, defendant Director of Finance filed his answer to the petition. Defendant alleged that either a use permit or approval by the city council was required for the operation of a video game center on the date when plaintiff initially applied for a business license to conduct such an enterprise. Defendant alleged that plaintiff's proposed video game center either constituted a "private recreation center" under section 27.8 of the city code or an "amusement concession" under former section 7-1 of the city code, a provision which was operative until amended on January 14, 1982, when ordinance No. 1394 took effect. Defendant claimed that section 27.8 required the issuance of a use permit and that former section 7-1 required that an applicant obtain the approval of the city council before a business license could be issued. Defendant also alleged that plaintiff's proper remedy was to apply for a writ of mandate pursuant to Code of Civil Procedure section 1094.5 in order to challenge the validity of the city council's decisions that he was not entitled to a use permit or to a business license to conduct a video game center.

Following a hearing, the trial court issued a memorandum of decision which concluded that, on the date when plaintiff initially applied for the issuance of a business license to conduct a video game center, his right to such license was controlled by former section 7-1 of the city code. That section, as it then read, provided, in pertinent part, that any person wishing to open an "amusement concession," among other things, must petition the city council to order the issuance of a license therefor. The section further provided that "On the hearing of such petition, the city council may grant the same in whole or in part, or may reject the same, and no license shall be issued thereon, except as ordered by the city council."

The trial court concluded that when plaintiff applied for a business license to operate a video game center, he was advised by a representative of the city, acting erroneously but in good faith, that it was necessary to apply for a use permit pursuant to section 27.8 of the city code; that this erroneous advice effectively prevented plaintiff from utilizing the procedure set forth in former section 7-1 by applying directly to the city council for a business license. The court reasoned, therefore, that plaintiff should now be accorded the right to have his application processed under former section 7-1. The court expressly rejected plaintiff's contention that on the date when he initially applied for a business license to conduct a video game center, he was entitled to such a license as a matter of right.[1]

On August 10, 1982, judgment in accordance with the court's memorandum of decision was duly entered. The judgment issued plaintiff a writ of mandate commanding defendant Director of Finance to process plaintiff's application for a business license pursuant to section 7-1 of the city code as it existed on January 29, 1982 (the date on which plaintiff filed his application for a use permit with the city's Department of Planning and Building). The judgment further provided that "The City is mandated to provide the process embodied in the former Section 7-1." A notice of appeal from this judgment was filed solely by defendant Director of Finance.

I.

As his first argument on appeal, defendant Director of Finance contends that the judgment appealed from is invalid insofar as it purports to compel the City of San Bruno to process plaintiff's application for a business license in accordance with former section 7-1 of the city code. Defendant points out that he was the only party named as a defendant in this action, and that the city was neither named as a defendant nor served with process. He argues that jurisdiction over the city is absolutely essential to the execution of the judgment which the trial court rendered in favor of plaintiff. We agree and find this issue dispositive.

Plaintiff's petition in this instance was so framed as to assert his right to traditional mandamus, under Code of Civil Procedure section 1085, rather than administrative mandamus, under Code of Civil Procedure section 1094.5. There is a significant difference between the two writs. ■ As the California Supreme Court pointed out in *Loder* v. *Municipal Court*

---

[1]The court stated, "Plaintiff may or may not be entitled to a license; he is entitled to a review of his application by a City Council conducting the process contemplated by Section 7-1. . . . [¶] The petition is granted only in part; to the extent that Plaintiff seeks an order requiring the City to issue a business license, it is denied. However, the City is mandated to provide the process embodied in former Section 7-1."

(1976) 17 Cal.3d 859, 863 [132 Cal.Rptr. 464, 553 P.2d 624], a writ of mandate based upon Code of Civil Procedure section 1085 can be issued only to compel the performance of a "clear, present and usually ministerial duty . . . ."[2] However, where a plaintiff seeks review of an adjudicatory or quasi-judicial decision by an administrative agency, he should seek relief under Code of Civil Procedure section 1094.5. (*City of Santa Cruz* v. *Local Agency Formation Com.* (1978) 76 Cal.App.3d 381, 390-391 [142 Cal.Rptr. 873].)

In this instance, plaintiff was not seeking a review of the quasi-judicial decisions by the planning commission or the city council which denied him a use permit and, subsequently, denied his claim that he had no need to obtain a use permit in order to operate a video game center. Rather than name the city or its council or planning commission as parties to this action, he chose to proceed solely against the city's Director of Finance, on the theory that the director had a ministerial duty to issue him the business license applied for (subject to the payment of the required fee) because his property was so zoned that the operation of a video game center was a permissible activity for which no use permit or other discretionary authorization was required. Plaintiff elected to stand or fall on the theory that he had an absolute right to the business permit applied for and was therefore entitled to utilize traditional mandamus in order to compel the director to perform the purely ministerial duty of issuing that permit. However, the trial court did not agree with this analysis and sought, instead, to fashion an alternative remedy for plaintiff based upon the court's conclusion that, under the applicable ordinance in effect when plaintiff applied for a business license to conduct a video game center, he was first required to obtain the approval of the city council. The question now before this court is whether, in the procedural context of this case, the judgment rendered by the trial court conferred any legally enforceable rights upon plaintiff. We conclude that it did not.

Subdivision (a) of Code of Civil Procedure section 389 provides, in pertinent part, that "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that

---

[2]In *State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 247 [115 Cal.Rptr. 497, 524 P.2d 1281], the California Supreme Court made the following observations concerning the limitations of traditional mandamus under Code of Civil Procedure section 1085: "That section may be employed to compel the performance of a duty which is purely ministerial in character; it cannot be applied to control discretion as to a matter lawfully entrusted to [an administrative agency]."

the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. *If he has not been so joined, the court shall order that he be made a party.*" (Italics added.)

Subdivision (b) of the statute provides that if a person described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether the action should proceed among the parties before it or should be dismissed without prejudice because the absent person is indispensable. In making this decision, the court should consider such factors as "whether a judgment rendered in the person's absence will be adequate . . . ."

■ The cases construing Code of Civil Procedure section 389 have held that the failure to join an "indispensable" party is not "a jurisdictional defect" in the fundamental sense, and that in the absence of such a party, the court still has the power to render a decision as to the parties before it. However, for reasons of equity and convenience, a court should not proceed with a case where an "indispensable" party is absent and cannot be joined. (*Ferraro* v. *Southern Cal. Gas Co.* (1980) 102 Cal.App.3d 33, 44 [162 Cal.Rptr. 238]; *Sierra Club, Inc.* v. *California Coastal Com.* (1979) 95 Cal.App.3d 495, 500 [157 Cal.Rptr. 190]; *Kraus* v. *Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 364 [140 Cal.Rptr. 744].)

In this instance, once the court decided that the plaintiff was not entitled to prevail on his theory that the issuance of a business license to operate a video game center was a purely ministerial act, the city should have been joined as a party defendant. It is unclear to us why plaintiff failed to ask the trial court to order such joinder once it became apparent that the court had rejected his ministerial duty theory. The trial court made no secret of its views on the subject when the parties orally argued their respective positions at a hearing held on July 8, 1982: "His [counsel for plaintiff's] position is that the entire use . . . permit process may not be imposed on his client. Therefore, he wants a business license issued, and that is a ministerial act and [Code Civ. Proc., § ] 1085 is an appropriate vehicle. [¶] I think you are . . . wrong. I think that 7.1 [*sic*] was the Code Section that applied . . . ."

Whatever may have been the reasons for the failure of the trial court or plaintiff to take appropriate steps to insure that the city was joined as a party to the action, the fact remains that the end result is a judgment which affords plaintiff no real relief. Insofar as the judgment commands the Director of

Finance to process plaintiff's application for a business license in accordance with section 7-1 of the city code as it read on January 29, 1982, that ordinance would leave the director with no alternative but to inform plaintiff that "no license shall be issued . . . except as ordered by the city council." Insofar as the judgment mandates the city to provide plaintiff with the process set forth in former section 7-1, the city was never a party to the action. As the California Supreme Court pointed out in *Jollie* v. *Superior Court* (1951) 38 Cal.2d 52, 59 [237 P.2d 641], a judgment should not be so drafted as "to purportedly and vainly grant relief against persons who are not parties to the litigation before the court; as to them the court is without jurisdiction in the cause." ■ Likewise, in *King* v. *King* (1971) 22 Cal.App.3d 319, 326-327 [99 Cal.Rptr. 200], the court observed that where the absence of a truly indispensable party has precluded the trial court from rendering an effective judgment between the parties before it, the trial court can be said to lack *jurisdiction of the subject matter.* We appear to be presented with precisely such a situation.

The judgment is reversed with directions to the trial court to dismiss the action without prejudice.

Kline, P. J., and Smith, J., concurred.