[Civ. Nos. 46737, 48884. Second Dist., Div. Two. Sept. 14, 1977.]

MARINA PLAZA et al., Plaintiffs and Appellants, v.
CALIFORNIA COASTAL ZONE CONSERVATION COMMISSION
et al., Defendants and Respondents.

312

314

**COUNSEL**

Hillel Chodos, Fadem, Berger, McIntire & Norton, Fadem, Berger & McIntire, Fadem, Berger & Norton and Michael M. Berger for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, R. H. Connett, Assistant Attorney General, Roderick Walston, Donatas Januta, William M. Chamberlain, Alan Robert Block, Deputy Attorneys General, John H. Larson, County Counsel and Robert W. Rodolf, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**ROTH, P. J.**—Marina Plaza filed a complaint for injunctive relief and damages and also sought the issuance of a writ of mandate compelling the California Coastal Zone Conservation Commission (Commission) to permit construction of a hotel and apartment complex. Demurrers by the County of Los Angeles (County) and the State of California to the complaint were sustained without leave to amend and orders of dismissal were entered as to the County and the state. The Commission answered the petition for a writ of mandate, trial was had and judgment was entered for the Commission. Marina Plaza appeals from the orders of dismissal and the judgment.

Plaintiffs are the owners of a leasehold interest in a 3.66-acre parcel in the Marina Del Rey. The marina is a public small craft harbor that is owned by the County. Its geographic boundaries encompass some 804 acres of land and water. Less than 50 percent of the area has been developed since the harbor itself occupies some 403 acres. The remaining acreage has been developed with a mixture of commercial and residential uses, with the exception of some 13 acres of which plaintiffs' 3.66 acres are a part.

The leasehold estate that is presently owned by Marina Plaza was originally conveyed by the County to a predecessor in interest on June 8, 1961. Marina Plaza acquired the leasehold on October 22, 1968. Over the years the lease has gone through several amendments, among which was a change in the scope of authorized development for the parcel from boatels or cabanas to hotel, apartments, or offices. The 60-year term originally provided for the duration of the leasehold estate has never been changed. Among others, the lease contains the following provision:

### "4. ACTIVE PUBLIC USE.

"The ultimate object of this lease is the complete and continuous use of the premises herein demised by and for the benefit of the public, without discrimination as to race or religion, the immediate object being the development and realization of the greatest possible revenue therefrom. It is agreed that said immediate and ultimate objects are consistent and compatible. Accordingly, Lessee covenants and agrees that he will operate said premises fully and continuously to the end that

the public may enjoy maximum benefits and County may obtain maximum revenue therefrom.

"In the event of any dispute or controversy relating hereto, this lease shall be construed with due regard to the aforesaid objects."

The Marina was developed with funds obtained from property taxation, as well as the sale of revenue bonds. The resolution of County's board of supervisors authorizing the issuance and sale of the bonds provided for repayment of the bonded indebtedness from revenues to be derived from leaseholds that were to be created within the harbor, as well as the public's use of the facilities that were to be developed therein. Marina Plaza's lease was consistent with this purpose.

The California Coastal Zone Conservation Act became effective on November 8, 1972. The provisions of the act created a state coastal and a regional commission that had jurisdiction over any development on plaintiffs' leasehold estate. The act enabled either of these governmental agencies to grant or deny a permit for development based upon considerations of environmental or ecological effects as well as consistency with state policy that the natural resources of the coastal zone are to be preserved, protected, and where possible, restored for the enjoyment of present and future generations. The jurisdiction conferred upon the regional and state commissions could only be divested upon (1) a showing that a vested right to proceed had been obtained in good faith and reliance upon a building permit of a city or county issued prior to November 8, 1972; (2) a showing of emergency or entitlement to a nonemergency permit; and (3) a determination being made by the regional commission that the parcel was located within a stabilized urban land area.

On December 12, 1972, plaintiff submitted a revised plan to develop the parcel with a 435-room hotel, 46 apartments, 3,400 square feet of retail sales space, and 14,860 square feet of office space. Various agencies of the County had approved this plan to the extent that a review thereof had been requested. However, as late as June 26, 1973, Marina Plaza still had to obtain a variance because their proposed development exceeded 50 percent lot coverage with less than the required parking. In addition, approval was still to be obtained as to the following: landscape plan, drainage and grading plans, fire department assurance that the develop-

ment plan provided adequate protection from fire hazard, and assurance that the planned vehicular access was adequate.

In apparent belief that Marina Plaza had not acquired a vested right to proceed with their project without approval of the regional commission, Marina Plaza invoked the provisions of the coastal act by seeking a permit. On September 17, 1973, the South Coast Regional Commission granted Marina Plaza's application and a permit for the construction. However, on September 21, 1973, Los Angeles Councilman Marvin Braude filed a notice of appeal[1] which was followed by seventeen others.

The state Commission held three hearings on the appeals: on November 7, 1973, January 23, 1974, March 6, 1974. At the conclusion of the March 6, 1974, hearing the state Commission by a vote of 10 to 0 voted to deny the permit.

In denying the permit, the state Commission found, among other things:

"(a) Approval of the proposed development would not be consistent with the Act's requirement for the 'orderly, balanced' development of Marina del Rey;

"(b) The pace and intensity of development at the Marina had quadrupled during the last four years. The proposed project would itself double the amount of hotel space presently available. In light of additional proposals for development, the need to guide future development so as to avoid irretrievable commitments of precious coastal resources is apparent;

---

[1]The grounds for the appeal were:

"The proposed development will have destructive effect on the use of the beaches, the marina, and the other marine and shore resources of the Venice, Marina del Rey and Playa del Rey coastal areas. It will be convention-oriented facility which, by definition, does not require proximity to the beach. In an area of congestion, and intense competition for space at and near the beach, by legitimate beach and water-oriented land uses, this would represent a frivolous diversion of the scarce resources to a land use capable of location elsewhere for its primary purpose.

"The intensity and density of the proposed land use, the inevitable increase in traffic and resulting need for parking, the general congestion resulting from an active hotel would be an unnecessary burden on a community already recognized as saturated by local residents, beach and marina visitors and their needs. This was recognized by the South Coast Regional Commission staff who recommended against this development."

"(c) The demands made on currently existing traffic lanes in the immediate area of the proposed development already exceed or closely approach current capacity levels. Approval should be conditioned upon provision for adequate road and transit facilities;

"(d) Approval of this project may set an undesirable precedent in view of the manifest desire of some existing lessees to convert existing uses to more intense and/or higher structures;

"(e) The subject parcel retains the character of being one of the few open parcels of land left at the Marina. Such parcels take on heightened importance by virtue of their scarcity and their proximity to large numbers of people."

Marina Plaza contends that the act is unconstitutional because it amounts to an unlawful appropriation of privately owned land and because the act is vague and uncertain and contains no or inadequate standards. However, *State of California* v. *Superior Court (Veta)* (1974) 12 Cal.3d 237 [115 Cal.Rptr. 497, 524 P.2d 1281] and *CEEED* v. *California Coastal Zone Conservation Com.* (1974) 43 Cal.App.3d 306 [118 Cal.Rptr. 315] authoritatively treat and dispose of these arguments and we adopt the holdings of these cases re the constitutionality of the act.

It is also contended that County's obligation to the bondholders is impaired to the extent that disapproval of Marina Plaza's project is likely to endanger repayment of the bonds. Even if this were not a purely speculative argument, Marina Plaza has no standing to raise this issue since it is not a bondholder. Nor is Marina Plaza's lease with the County impaired by Marina Plaza's inability to build the disapproved project which is provided for in the lease. This provision is clearly contingent, as the trial court found, on the issuance of all appropriate permits of which the instant permit is one.

Marina Plaza next contends that since more than 60 days elapsed between the decision of the regional and state commissions, the former's decision was final by operation of Public Resources Code, section 27423,

subdivision (b).[2] The findings of the trial court on this issue are dispositive:

"b. Petitioner [Marina Plaza] agreed to three extensions of time in which the Commission could take action on the appeal. The first extension was at the request of an appellant [in the proceedings before the Commission] and was consented to by Petitioner. The first extension merely postponed the date of the initially scheduled hearing to a new date still within the statutory 60 day period. The second two extensions of time placed Commission action beyond the initial 60 day period. These latter two extensions were at the request of Petitioner. The Commission acted on the appeal within the time encompassed by these extensions.

"c. The second extension was at the express request of Petitioner as disclosed by a telegram and a letter in the administrative record.

"d. The third extension was requested by Petitioner at the suggestion of one of the State Commissioners who indicated that perhaps a modification of the proposed development could be worked out which would be acceptable to Petitioner and also make it comply with the criteria of the Coastal Act for granting of permits. The extension of time was for the purpose of exploring the possibility of such a modification. Petitioner was expressly advised that it was under no obligation to agree to another extension and need only do so if it thought it was in its own interest to try to resolve the matter by considering modifications to its proposed development.

"e. There is nothing in the record to indicate that Petitioner was under any duress to request or agree to any extensions of time and the record is quite the converse, disclosing that each extension was sought by Petitioner voluntarily and in pursuit of its own interest."

---

[2]Section 27423, subdivision (b) stated: "The commission may affirm, reverse, or modify the decision of the regional commission. If the commission fails to act within 60 days after notice of appeal has been filed, the regional commission's decision shall become final."

Public Resources Code section 27300 et seq., Coastal Zone Conservation Act, was in effect until January 1, 1977, and governs the proceedings at bench. Although some of the issues are arguably moot, the points raised are so intertwined that we deal with all issues on the merits.

Under these circumstances, the facts do not support the contention made. The error, if any, was invited and hence will not be considered by this court.

■ Appellant next contends that none of the parties who appealed the regional commission's decision were "aggrieved" in the sense of Public Resources Code, section 27423, subdivision (a).[3]

"Aggrieved" is defined by section 13903 of title 14 of the California Administrative Code: "A person is 'aggrieved' within the meaning of Public Resources Code, Section 27423(a), only if he or she is dissatisfied with a determination of a Regional Commission, and he and his or she and her representative opposed the application on which the Regional Commission determination was made in person at the public hearing or by letter or other appropriate means suitable to inform the Commission of the nature of the opposition, or would have opposed the application but for good cause were unable to do so. Such a person need not be a resident of the county in which the development is proposed."

Marina Plaza admits that at least two of the appellants, Councilman Braude included, appeared before the regional commission to oppose the permit. Accordingly, they were "aggrieved" within the definition of that word.[4]

■ The trial court found that, in conformance with Public Resources Code, section 27423, subdivision (c), the state commission determined that a "substantial issue" was raised by the appeal. Marina Plaza's contention to the contrary amounts to a reargument of the evidence which, in this forum, is inappropriate.[5]

---

[3]Section 27423, subdivision (a) stated: "(a) An applicant, or any person aggrieved by approval of a permit by the regional commission, may appeal to the commission."

[4]Marina Plaza failed to raise this issue before the state commission.

[5]The trial court found:

"21. The State Commission determined that a substantial issue existed in this case. This determination was made on the basis of the State Commission's staff recommendation which stated, among other things, that:

"a. The proposed development was the first highrise project on appeal before the State Commission in the Marina del Rey area;

"b. Although the Marina del Rey is designed to be a recreational area, there is a question whether it in fact has adequate recreational, as opposed to business and residential, facilities;

"c. The Marina del Rey is 'an archtype' for marina developments up and down the coast and whatever occurs at the Marina del Rey tends to set precedent for other marina developments on the coast."

■ Contrary to Marina Plaza's contention, a two-thirds vote was required on its project by the state commission.

Public Resources Code section 27401 provided in relevant part:

"No permit shall be issued for any of the following without the affirmative vote of two-thirds of the total authorized membership of the regional commission, or of the commission on appeal:

". . . . . . . . . . . . . . . . . . . . .

"(b) Any development which would reduce the size of any beach or other area usable for public recreation.

"(c) Any development which would reduce or impose restrictions upon public access to tidal and submerged lands, beaches and the mean high tideline where there is no beach."

The state commission determined that a two-thirds vote was applicable on the basis of a state commission staff recommendation which stated: "Two-thirds Vote Recommendation: The staff recommends that a ⅔ vote is required to approve a permit under section 27401(b) of the Act because the project would 'reduce the size of an area usable for public recreation'. The reason for this recommendation is that the project site is immediately adjacent to a major small craft harbor and is near major population centers in need of recreational resources."

The state commission's vote for denial of the permit was 10 to 0. The result would therefore have been no different even under a mere majority vote and Marina Plaza has suffered no harm or prejudice due to the two-thirds vote requirement that was imposed.

We have examined the numerous insubstantive procedural errors which Marina Plaza contends were committed in the proceedings before the state commission and which the trial court determined either did not occur or were waived. We concur with those findings and conclusions of the trial court.

■ Marina Plaza's action against County was predicated in part on the argument that County should have petitioned the regional commission to declare that the parcel in question is located in a stabilized urban

land area. The effect of such a determination would have been to exempt Marina Plaza's parcel from the jurisdiction of the act. (See *ante,* p. 317.)

There is no provision of any law, the Public Resources Code included, which requires or enjoins County to file and prosecute such a petition. Accordingly, under the settled principles of Code of Civil Procedure, section 1086 [mandate lies only to compel performance of an act specially enjoined by law] the trial court was without power to order County to take the action requested by Marina Plaza.

■ Marina Plaza also seeks to hold County liable under the lease contract which it contends County breached by not petitioning for the aforesaid exclusion. Initially we note that the pleadings together with their exhibits show that the Marina Del Rey would not qualify as a stabilized urban land area. Allegations of 80 percent development are insufficient to qualify a land area for the exclusion without an accompanying showing of the existence of a residential, commercial, or industrial area, the nature of which is unlikely to change due to the density and/or intensity of development under applicable zoning. That such a showing cannot be made for the Marina Del Rey is apparent at the outset from the fact that one-half of the area has been permanently committed as a small craft harbor with the remaining 50 percent being developed as a mixture of recreational, commercial, and residential uses, such as anchorages, parks, beaches, boat yards, yacht clubs, stores, restaurants, apartments, offices, and hotels. Additionally, the area is not "stabilized" when under applicable zoning as of January 1, 1972, additional development on practically every leasehold was possible.

Under these circumstances, County correctly contends that a petition to exclude the parcel as a stabilized urban land area would in all likelihood have been futile.

However, even if that were not the case, the covenant of good faith and fair dealing was, contrary to Marina Plaza's contention, not breached by virtue of County's failure to petition for an exclusion.

Marina Plaza's lease with County was expressly made subject to provisions of law:

"Section 503 . . . the Board of Supervisors covenants that it will forthwith proceed to construct the Project or cause same to be construct-

ed in substantial compliance with the plans and specifications . . . and in conformity with law and all requirements of all governmental authorities having jurisdiction thereover . . .''

"Section 507 . . . the Board of Supervisors and the County will comply with all laws, rules, regulations, orders and directions of any legislative, executive, administrative or judicial body applicable to the Project."

These provisions constitute a declaration of intent on the part of the board of supervisors to comply with existing as well as future law affecting the Marina Del Rey. Thus, compliance with rather than exclusion from the coastal initiative is in keeping with the provisions of the lease and thus the covenant of good faith and fair dealing.

Additionally, the lease and the coastal act have comparable objectives insofar as public use within the coastal zone are concerned. Section 4 of the lease (see *supra*) indicates that the following public purposes are to be served thereunder: (1) complete and continuous use of the demised premises by and for the benefit of the public in connection with its use of the harbor; (2) and production of revenue with which to pay for the harbor. Marina Plaza's construction of these provisions would sacrifice the former for the latter, as they view their role solely as a revenue producer. This construction is contrary to Marina Plaza's expressed willingness to accept both objectives of the lease as consistent and compatible. Their development of the parcel must, in addition to revenue, provide for a publicly oriented harbor use.

We hold that County did not breach its lease agreement with Marina Plaza.

Marina Plaza's complaint also sought damages for inverse condemnation. The ultimate facts upon which Marina Plaza seek to rely in this respect are the conveyance of a 60-year leasehold for development of public facilities thereon; the expenditure of funds on a plan of development; and an inability to proceed therewith unless the County petitions the regional commission for an exclusion of the Marina Del Rey from the policies and controls that have been imposed upon development within the coastal zone. Thus it is regulation rather than confiscation that is the consequence of County's inaction.

In order to state a cause of action for inverse condemnation there must be an invasion or appropriation of some valuable property right which the landowner possesses and the invasion or appropriation must directly and specially affect the landowner to his injury. (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 119-120 [109 Cal.Rptr. 799, 514 P.2d 111]; *Hilltop Properties* v. *State of California* (1965) 233 Cal.App.2d 349, 355-356 [43 Cal.Rptr. 605, 37 A.L.R.3d 109].)

Implicit in the aforementioned requirements necessary to maintain the action is that a governmental agency has taken some action that has caused an invasion or appropriation of private property rights, such as: actual physical injury to real property proximately caused by a public improvement as deliberately designed and constructed (*Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250 [42 Cal.Rptr. 89, 398 P.2d 129]; *Holtz* v. *Superior Court* (1970) 3 Cal.3d 296 [90 Cal.Rptr. 345, 475 P.2d 441]; *Bauer* v. *County of Ventura* (1955) 45 Cal.2d 276 [289 P.2d 1]; *Breidert* v. *Southern Pac. Co.* (1964) 61 Cal.2d 659 [39 Cal.Rptr. 903, 394 P.2d 719]); interference with the use and enjoyment of private property caused by precondemnation activities (*Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345]); and interference with the use and enjoyment of private property caused by the construction of a public improvement (*Bacich* v. *Board of Control* (1943) 23 Cal.2d 343 [144 P.2d 818]; *People* v. *Ricciardi* (1943) 23 Cal.2d 390 [144 P.2d 799]; *People* ex rel. *Dept. Pub. Wks.* v. *Volunteers of America* (1971) 21 Cal.App.3d 111 [98 Cal.Rptr. 423, 51 A.L.R.3d 844]).

Additionally, it has not been absence of a threshold request for an exclusion that has aborted plaintiffs' planned development, but rather plaintiffs' own election to proceed by way of permit rather than declaration of vested right that has triggered the application of the interim land use controls of which plaintiffs complain. Having subjected themselves to the jurisdiction of the state and regional commissions plaintiffs' remedy for denial of a permit is mandamus, rather than inverse condemnation. (Pub. Resources Code, § 27424; *State of California* v. *Superior Court (Veta)*, 12 Cal.3d 237, 252 [115 Cal.Rptr. 497, 524 P.2d 1281].)

Marina Plaza finally contends that by virtue of its expenditure of $880,000 on its project, it has acquired a vested right which should exempt it from the purview of the act.[6]

---

[6]The major components of this sum are: the purchase price ($282,500), taxes ($80,096), rent ($48,274), and architect's fees ($177,961).

The principal problem with this argument is Marina Plaza's revealing decision to apply for a permit under the act. No right to build vests until a building permit has been obtained. *Spindler Realty Corp.* v. *Monning* (1966) 243 Cal.App.2d 255 [53 Cal.Rptr. 7]; *Anderson* v. *City Council* (1964) 229 Cal.App.2d 79 [40 Cal.Rptr. 41]; *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 791-799 [132 Cal.Rptr. 386, 553 P.2d 546].) Marina Plaza itself conceded this principle when it chose not to seek adjudication of rights (which it now alleges were vested) under the procedures established by act. If a party did not seek an adjudication of the vested right exemption in procedures laid down in the act, it cannot seek to do so by mandate. (*State of California* v. *Superior Court, supra,* 12 Cal.3d 237, 248.)

The judgment and the orders appealed from are affirmed.

Fleming, J., and Beach, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 10, 1977.