[Civ. No. 66560. Second Dist., Div. Three. May 7, 1984.]

INTERSTATE MARINA DEVELOPMENT CO. et al.,
Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

440

COUNSEL

Foonberg, Jampol & Gardner and Alan R. Jampol for Plaintiffs and Appellants.

John H. Larson and DeWitt W. Clinton, County Counsel, Donald K. Byrne, Chief Deputy County Counsel, and Robert W. Rodolf, Deputy County Counsel, for Defendant and Respondent.

## Opinion

KLEIN, P. J.—Plaintiffs and appellants Interstate Marina Development Co., MDR Hotel Properties, and 44 Del Rey Properties, Ltd. are corporate lessees of the defendant and respondent County of Los Angeles (County) which are operating apartments that they built on leaseholds in Marina Del Rey, California; Real Property Management, Inc. is the property manager of the apartments. They (hereinafter referred to collectively as Lessees) appeal from a judgment in favor of the County declaring the County rent law valid in all respects and constitutional as applied by the County under its proprietary leases with Lessees.[1]

For the reasons stated herein, the judgment is affirmed.

### Procedural and Factual Background

The 60-year leases, which were negotiated at various times about 20 years ago, to which the Lessees and the County are parties, authorize the County to control prices based upon considerations of fair and reasonable cost to the public and fair and reasonable return upon the Lessees' investment.[2]

---

[1]Procedurally, this consolidated case is somewhat confusing. At the June 19, 1981, hearing on the County's demurrers to the Lessees' fourth amended complaint in case no. WEC 059213 B, as distinguished from WEC 059213 A, the trial court sustained general demurrers to claims relating to the validity of the County rent law and overruled the remaining demurrers. Lessees waived rights to further amend their complaint. Pursuant to a comprehensive stipulation of facts, the trial court ordered that the claims relating to the County rent law be severed from the remaining claims and a separate judgment be entered. The trial court then determined good cause existed and ordered that the County have judgment for declaratory relief to the effect that the County rent law in its application to the Lessees does not constitute a breach of the lease between the Lessees and the County, and does not unconstitutionally impair the Lessees' respective rights under the leases, and that the County is not estopped to apply the County rent law to the Lessees.

It is from this judgment that Lessees appeal.

[2]Section 16 of the leases states:

"Controlled Prices. [¶] Lessee shall at all times maintain a complete list or schedule of the prices charged for all goods or services, or combinations thereof, supplied to the public on or from the premises hereby demised, whether the same are supplied by Lessee or by its sublessees, assignees, concessionaires, permittees or licensees. [¶] Said prices shall be fair and reasonable, based upon the following two (2) considerations: [¶] First, that the property herein demised is intended to serve a public use and to provide needed facilities to the public at fair and reasonable cost; second, that Lessee is entitled to a fair and reasonable return upon his investment pursuant to this lease. [¶] In the event that Director [of the Department of Small Craft Harbors of the County] notifies Lessee that any of said prices are not fair and reasonable, Lessee shall have the right to confer with Director and to justify said prices. If, after reasonable conference and consultation, Director shall determine that any of said prices are not fair and reasonable, the same shall be modified by Lessee or its sublessees, assignees, concessionaires, permittees or licensees, as directed. [¶] The Lessee may appeal the determination of the Director to the Board of Supervisors, whose decision shall be final and conclusive. Pending such appeal, the prices fixed by the Director, shall be the maximum charged by the Lessee."

The leases also provide that Lessees shall abide by the County's rules, regulations and ordinances in the operation of the leaseholds.[3]

On June 21, 1979, the County rent law, ordinance No. 11950 was adopted as a legislative response to the shortage of affordable housing and the concomitant hardship faced by those who reside in rental units.

In anticipation of the County's adoption of the rent control ordinance, the Lessees filed an action on April 26, 1979, against the County for declaratory relief, specific performance and injunctive relief. The case was bifurcated to determine the issue of the validity of the County rent law as applicable to the Lessees separate from the issue of whether the County could exercise ex-contractual control over residency aboard boats berthed in the Marina.

Effective April 25, 1978, the County enacted ordinance No. 11740, commonly known as the liveaboard ordinance, as an amendment to Ordinance No. 9359, the County harbor and maritime ordinance.[4] The new law prohibited the termination of the liveaboard status or slip tenancy of any residential boater at Marina del Rey, except for certain specified causes, and created a civil remedy for the termination of residential boat slip tenancies without cause.

The trial court found the County liveaboard ordinance violated the contract clause of the state and federal Constitutions, because the law substantially impaired the Lessees' right under section 22(A)(2)[5] of their leases with the County to control and create tenancies of one year or less, and failed to meet an important general social problem in that the group protected was small and loss of liveaboard rights would not substantially affect the housing supply of the County.

The County has not appealed from the judgment in favor of Lessees on the liveaboard issue.

---

[3]Section 41 of the lease states in pertinent part: "Rules and Regulations [¶] Lessees shall abide by all applicable rules, regulations, resolutions, ordinances, statutes of the County of Los Angeles, the State of California or other governmental body, where applicable, respecting the use, operation, maintenance, or repair or improvement of the leased premises . . . ."
In addition, section 3, paragraph 4, contains a similar clause.

[4]Ordinance No. 11740, codified in Los Angeles County Code section 19.12.940, limited the eviction of liveaboards to certain grounds, including failure to pay rent, creating a nuisance, causing damage to the marina, interfering with the enjoyment of others, using the vessel for illegal purposes, and failing to comply with laws, ordinances or reasonable rules established by the landlord.

[5]Section 22(A)(2) states in pertinent part: "Non-Commercial Subleases [¶] Lessee may, without prior approval of Director, sublease portions of the demised premises for a period not to exceed one year for personal, non-commercial uses, including . . . , boat slips, . . . ."

The judgment declaring the County rent law valid and constitutional was entered pursuant to stipulation of the parties without prejudice to this appeal.

## CONTENTIONS

Lessees contend the judgment is erroneous as a matter of law because of the price control provision in section 16 of the leases. They maintain that the application of the County rent law to them unconstitutionally impairs their rights under their contracts with the County and is a violation of their right to due process of law as guaranteed by the Fourteenth Amendment. Lessees further aver that the County is estopped to assert its police power to control rents in Marina del Rey, that the County rent law discriminates unfairly and arbitrarily against Lessees in violation of the equal protection clause of the Fourteenth Amendment, that the application of the County rent law to Lessees is a breach of the covenant of good faith and fair dealing implied in the leases, and lastly, that under the doctrine of collateral estoppel, the trial court's final adjudication of the liveaboard ordinance as unconstitutional operates as a conclusive adjudication on the constitutionality of the County rent law.

## SUMMARY

We find the County rent law valid and constitutional as applied to Lessees for the reasons stated below.

## DISCUSSION

1. *Standard of Review.*

■ "The governing law is stated in *Mefford* v. *City of Tulare,* [1951] 102 Cal.App.2d 919 [228 P.2d 847], at page 922, as follows: 'The purpose of declaratory relief is to liquidate uncertainties and controversies which might result in future litigation and whether a determination is proper in an action for declaratory relief is a matter within the trial court's discretion. Unless a clear abuse of discretion is shown, the trial court's decision will not be disturbed on appeal.'" (*Roberts* v. *Reynolds* (1963) 212 Cal.App.2d 818, 827 [28 Cal.Rptr. 261].)

■ "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently

grave to amount to a manifest miscarriage of justice; . . ." (*Brown* v. *Newby* (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018].)

We find no abuse of discretion by the trial court in its rulings here.

2. ■ *The trial court's determination that the liveaboard ordinance is unconstitutional is not a collateral estoppel on the constitutionality of the County rent law as applied to Lessees.*

■ Under the principle of collateral estoppel, a prior judicial determination of a legal question based on specific facts may be binding in a later action between the same parties. (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 871 [127 Cal.Rptr. 110, 544 P.2d 1310].) Where the later action does not involve the same facts, the doctrine does not apply. *Hone* v. *Climatrol Industries, Inc.* (1976) 59 Cal.App.3d 513, 529 [130 Cal.Rptr. 770], enunciated the test as "[w]as the issue decided in the prior adjudication identical with the one presented in the action in question?"

■ In the case before us, the answer to that question must be in the negative. The two laws in question differ significantly in terms of subject matter. In stating the obvious, an eviction control measure is not a rent control law. In addition, the two laws differ in the way they impinge on the contractual relationship. The liveaboard ordinance directly conflicted with the Lessees' right under section 22(A)(2) of their leases with the County to control and create tenancies of one year or less. The County rent law, rather than conflicting with section 16's price control provisions, merely added an additional level of price control.

The liveaboard ordinance was found to be an unjustifiable exercise of the police power because it was not directed to the general welfare of the people of the County, nor was it designed to promote health, safety or morals, the group it benefited was minuscule, and the loss of liveaboard rights would not substantially affect the housing supply of the County. In contrast, the County rent law has a broad legitimate purpose as the class is large and the ordinance is directed to the general welfare of the people throughout the County.

The claim of collateral estoppel must fail for an additional reason, namely, that the constitutional issues relating to the County rent law were expressly reserved for appeal. (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 209, p. 3348.) Lessees agreed to entry of a judgment declaring the County rent law valid and applicable to them for the purpose of prosecuting this appeal. It was the obvious intent of the parties to allow the trial court

to determine the constitutionality of the liveaboard ordinance and to allow this court to review the correctness of the trial court's ruling that the County rent law was a constitutional enactment. Having agreed to allow the trial court to enter an adverse judgment for the purposes of this appeal, Lessees cannot now raise collateral estoppel.

3. ▪ *There is no unconstitutional impairment of the contract by the County rent law.*

▪ Although the language of the contract clause of the federal Constitution (art. I, § 10, cl. 1) is facially absolute, its prohibition is accommodated to the inherent police power of the state to safeguard the vital interests of its people. (*Energy Reserves* v. *Kansas Power & Light* (1983) 459 U.S. 400, 410 [74 L.Ed.2d 569, 580, 103 S.Ct. 697]; *Home Bldg. & L. Assn.* v. *Blaisdell* (1934) 290 U.S. 398, 434 [78 L.Ed. 413, 426, 54 S.Ct. 231, 88 A.L.R. 1481].) However, that power has limits when its exercise effects substantial modification of private contracts. Despite the customary deference courts give to social and economic legislation, laws altering the rights and obligations of contracting parties must be reasonable and necessary for the public purpose for which they were enacted. (*Allied Structural Steel Co.* v. *Spannaus* (1978) 438 U.S. 234, 244 [57 L.Ed.2d 727, 736, 98 S.Ct. 2716].)

In applying these principles to the present case, the first inquiry must be whether the County rent law has, in fact, operated as a substantial impairment of a contractual relationship. The severity of the impairment measures the height of the hurdle the legislation must clear. Minimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment, on the other hand, will push the inquiry to a careful scrutiny of the nature and purpose of the ordinance. (*Id.,* at pp. 244-245 [57 L.Ed.2d at pp. 736-737].)

▪ A substantial impairment can only be justified by a significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem. Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of the rights and responsibilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. (*Energy Reserves* v. *Kansas Power & Light, supra,* 459 U.S. at pp. 411-412 [74 L.Ed.2d at p. 581].) The government must use the least intrusive means to achieve its goals. It is not free to impose a drastic impairment when an evident and more moderate

course would serve its purposes equally well. (*United States Trust Co.* v. *New Jersey* (1977) 431 U.S. 1, 31 [52 L.Ed.2d 92, 115, 97 S.Ct. 1505].)

■ Where the government is a party to the contract, the level of scrutiny is necessarily greater, because its self-interest is involved. Impairments of a government's own contracts face more stringent examinations under the contract clause then do laws regulating contractual relationships between private parties. (*Allied Structural Steel Co.* v. *Spannaus, supra,* 438 U.S. at p. 244, fn. 15 [57 L.Ed.2d at p. 736].)

■ *Home Bldg. & L. Assn.* v. *Blaisdell, supra,* 290 U.S. at pages 444-447 [78 L.Ed. at pages 432-433], identified four factors which must be present for a law to survive a challenge of unconstitutional impairment of contract: (1) the existence of an emergency which furnishes proper occasion for the exercise of the power;[6] (2) the legislation is addressed to a legitimate end, that is, not for the mere advantage of particular individuals but for the protection of a basic interest of society; (3) the relief afforded is of a character appropriate to the emergency and the conditions imposed are reasonable; and (4) the legislation is temporary in operation, limited to the exigency which called it forth.

The California Supreme Court has adopted a similar analysis of impairment of contract claims. *Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 308-310 [152 Cal.Rptr. 903, 591 P.2d 1], began by assessing the impact of the state law upon the contract rights of the parties involved. A severe impairment would heighten the level of judicial scrutiny requiring a more careful examination of the legislation's nature and purpose. Where the government is a party to the contract, the usual deference to the Legislature's judgment is not necessary and a naked assertion of an emergency situation is always open to judicial inquiry.

■ Applying these standards to the case before us, since the County is a party to the contract, the impairment must withstand a stringent examination.

The County rent law was enacted on June 21, 1979, as a legislative response to the shortage of decent, affordable housing in the unincorporated areas of the County resulting in a critically low vacancy rate and rising

---

[6]We recognize that *United States Trust Co.* v. *New Jersey, supra,* 431 U.S. at pages 22-23, footnote 19 [52 L.Ed.2d at pages 109-110], said that the existence of an emergency is not always required to justify a contractual impairment but it is only one factor to be considered in determining the reasonableness of the impairment. Here, however, the County relies upon a housing crisis as the justification for the challenged legislation.

rents exploiting such shortage. In particular, persons on fixed incomes, persons of low income, and senior citizens are faced with special hardships and are forced to spend less on other necessities of life in order to pay requested rent increases.

The ordinance sought to safeguard tenants from prohibitive rent increases while continuing to provide landlords with just and reasonable returns on their rental units. There was no freeze or rollback of rents. Rather, there was an automatic annual percentage increase of 7.5 percent, full recoupment for increases in the cost of utilities where the landlord pays for such utilities and additional allowed increases for capital improvements and rehabilitation costs.

Another factor indicating the reasonableness of the measure is that in the situation before us, it is not as if the governmental entity has entered a field it had never before sought to regulate. (*Allied Structural Steel Co.* v. *Spannaus, supra,* 438 U.S. at p. 249 [57 L.Ed.2d at p. 739].) Rent control, like the imposition of a new tax, is simply one of the usual hazards of the business enterprise. (See *Westfield-Palos Verdes Co.* v. *City of Rancho Palos Verdes* (1977) 73 Cal.App.3d 486, 494 [141 Cal.Rptr. 36].)

The County rent law was to be a one-year interim measure, but has been repeatedly extended in the absence of a 5 percent vacancy rate for rental units within the County's unincorporated areas, and is now scheduled to expire on December 31, 1985.

Unlike the liveaboard ordinance, which aimed at giving only residential boat slip tenants the security of an indefinite term of lease, the County rent law was directed at remedying a broad social and economic problem. It was directed toward the welfare of a large group of people in Los Angeles County to enable them to afford decent shelter during a period when the rental market was exceptionally tight.

Rent control is a reasonable legislative response to such a situation. *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 161 [130 Cal.Rptr. 465, 550 P.2d 1001], held that rent controls will be sustained as a proper exercise of the police power unless there is "a complete absence of even a debatable rational basis for the legislative determination . . . that rent control is a reasonable means of counteracting harms and dangers to the public health and welfare emanating from a housing shortage." Such rational basis is clearly present here.

In addition to being reasonable, the County rent law was also necessary. Section 16, the lease provision setting out price controls, did not eliminate

the need for rent control in Marina del Rey. The leases merely required that prices be fair and reasonable, based upon considerations of providing needed facilities to the public at a fair and reasonable cost while earning Lessees a just return upon their investment. Such a provision in the leases did not make rent control superfluous or redundant.

The County rent law is properly tailored to the legislative purpose of safeguarding tenants during a time of low vacancies and soaring rents, while ensuring that landlords are not deprived of a fair return on their investment. The conditions imposed are reasonable, hardly confiscatory and under the circumstances, the means used to achieve the County's goals are moderate, not drastic.

The state cannot use the police power to avoid meeting its financial obligations. (*Sonoma County Organization of Public Employees* v. *County of Sonoma, supra,* 23 Cal.3d at p. 308.) However, that is not the situation we are faced with here. The County is not attempting to repudiate debts it has incurred under a contract. It is using the power to achieve the legitimate purpose of promoting the welfare of its people.

A state is without power to enter into binding contracts not to exercise its police power in the future. (*United States Trust Co.* v. *New Jersey, supra,* 431 U.S. at p. 23, fn. 20 [52 L.Ed.2d at p. 110].) Rent control is an exercise of that power. "The States must possess broad power to adopt general regulatory measures without being concerned that private contracts will be impaired, or even destroyed, as a result. Otherwise, one would be able to obtain immunity from state regulation by making private contractual arrangements. This principle is summarized in Justice Holmes' well-known dictum: 'One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them.' (*Hudson Water Co.* v. *McCarter,* 209 U.S. 349, 357 (1908).)" (*United States Trust Co.* v. *New Jersey, supra,* 431 U.S. at p. 22 [52 L.Ed.2d at p. 109].)

The County rent law as applied to Lessees passes constitutional muster because it is an interim measure in response to a real scarcity of affordable housing, has a broad legitimate purpose that is within the police power, and is a reasonable response to the exigency which called it forth.

Finally, since Lessees have indicated their desire for performance on the contract, we call their attention to sections 3 and 41 of their leases, making them subject at all times to ordinances of the County. Arguably, that includes the County rent law.

(a) *There was no substantial impairment of the contract.*

The County rent law has been subjected to heightened scrutiny only because the government was a party to the contract. Otherwise, minimal alteration of contractual obligations, which is the case here, requires a less stringent examination. (*Allied Structural Steel Co.* v. *Spannaus, supra,* 438 U.S. at p. 245 [57 L.Ed.2d at pp. 736-737].)

Lessees contend that there has been a substantial impairment because the leases specifically provided for a fair and reasonable return based on current market value of the properties, arguing that the County rent law provides for a fair and reasonable return based only on the original investment. However, Lessees' argument is not persuasive. Regardless of which yardstick is utilized, the rent law applies to all residential landlords uniformly. It is impossible to draw lines with mathematical precision, and legislators do not have to engage in a case by case approach to rent control. Some landlords will always face a greater hardship than others. For example, those who own buildings which are being financed at market rates are in a far different situation from landlords who own unencumbered property which they have held for many years.

The key is that the rent law is designed to guarantee landlords a rate of return similar to that experienced prior to the enactment of the ordinance with adjustments for inflation. It is inevitable that all landlords are not identically situated, and hence, all will not be affected to an identical degree. However, that is not required. Similar treatment for those similarly situated is sufficient. (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].)

Further, although Lessees claim a substantial impairment, they failed to demonstrate such impairment in any persuasive manner. The record does not disclose any figures to indicate the potential disparity between rents under section 16 and under the County rent law. The contended injury to Lessees is speculative at best.

4. *The application of the County rent law to Lessees comports with constitutional due process.*

Lessees' contention that the County rent law as applied to them is a violation of their due process rights is without merit. They argue that the County rent law is unnecessary to keep rents low, that the law lacks relevance, that it is not a rational curative measure because it does nothing the leases cannot accomplish, and that there is no problem to cure.

 Substantive due process requires only that the law not be unreasonable, arbitrary, or capricious and that it have a real and substantial relation to the object sought to be obtained. (*Gray* v. *Whitmore* (1971) 17 Cal.App.3d 1, 22 [94 Cal.Rptr. 904].) Despite Lessees' contentions, section 16 of the leases does not "dispel the constitutionally sufficient rational basis for residential rent control provided by the [ordinance's] statement of purpose [Los Angeles County Ord. No. 11950] . . . ." (*Birkenfeld* v. *City of Berkeley, supra* 17 Cal.3d at p. 162.)

Further, if what Lessees have conceded is in fact correct, namely, that the County rent law does nothing that section 16 cannot accomplish, then there is no harm to Lessees. The final choice of available controls is a matter for legislative wisdom, not judicial scrutiny. The County is not constitutionally required to exempt Lessees from its ordinance simply because it has the power to accomplish the same result under its leases.

5. *The County rent law does not deprive Lessees of equal protection of the laws.*

 Lessees contend that a violation of equal protection has occurred because they are being subjected to a law that applies equally to all landlords within the County, although they are not similarly situated due to their already being subject to price controls under section 16 of the leases. This contention is also without merit.

 Problems of classification under the California Constitution are similar to those presented by the equal protection clause of the Fourteenth Amendment. Under either provision, the mere production of inequality which necessarily results in some degree in every selection of persons for regulation does not place the classification within the constitutional prohibition. (*People* v. *Western Fruit Growers* (1943) 22 Cal.2d 494, 506 [140 P.2d 13].)

 Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, there is a presumption of constitutionality of statutory discriminations and all that is required is that the challenged classification be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. It is not for the judiciary to sit as a super-legislature to judge the wisdom or undesirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. In the

local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment. (*New Orleans* v. *Dukes* (1976) 427 U.S. 297, 303-304 [49 L.Ed.2d 511, 516-517, 96 S.Ct. 2513].)

■■■■ Lessees' argument is that they are being treated similarly, although they should not be, because in fact they are not similarly situated, and object that they are being subjected to two levels of rent control, while other landlords are subject to only one level. However, the County rent law makes no distinctions between landlords in Marina del Rey and those elsewhere in the County, and it applies uniformly to all. Any additional burden Lessees may encounter is as a result of contractual obligations to which they voluntarily subjected themselves prior to the enactment of the ordinance. All that is constitutionally required is that the County rent law be rationally related to a legitimate state interest, which it is, as discussed *ante.*

To exempt Lessees from the County rent law would be to accord them more favorable treatment, and that is not something we are about to do. The County rent law is not discriminatory. It uniformly subjects landlords within the unincorporated areas of the County to rent control, which is an admitted hardship for them all.

6. *The application of the County rent law to Lessees does not breach the covenant of good faith and fair dealing implied in the leases.*

■■■■ Lessees' contention that the implied covenant of good faith and fair dealing requires the County to exempt them from the application of the County rent law is similarly unavailing. They claim that the ordinance deprives them of the fruits of their investment, but that is no more true for them than for landlords elsewhere in the County. Lessees' allegation that the County is seeking to avoid its own obligations by "simply passing a law" is similarly unfounded. The law was enacted to protect tenants, not to enable the County to avoid its contractual obligations.

As discussed *ante,* the County did not bargain away its right to utilize the police power, and Lessees were well aware of this when they agreed to sections 3 and 41 of their leases making them subject at all times to the County's ordinances.

In *Marina Plaza* v. *California Coastal Zone Conservation Com.* (1977) 73 Cal.App.3d 311, 323 [140 Cal.Rptr. 725], there were express provisions in a lease that parcel development proceed in conformity with law and all requirements of governmental authorities having jurisdiction thereover.

Subsequent to the leasehold being conveyed by the County, the California Coastal Zone Conservation Act became law. The court held, "compliance with rather than exclusion from the coastal initiative [was] in keeping with the provisions of the lease and thus the covenant of good faith and fair dealing." (*Id.*, at p. 324.) Compliance with the law rather than exclusion therefrom is equally appropriate in the case before us.

As in *Marina Plaza,* the leases and the law have compatible objectives—here, public entitlement at a reasonable cost, and a fair return upon Lessees' investment. In section 16, Lessees expressed willingness to accept both objectives of the leases as consistent and compatible. Lessees' construction of the leases would sacrifice the former objective for the latter. However, section 16 eliminated the possibility of unrestricted profits from the outset.

Lastly, as Lessees have argued that there is nothing the County cannot do under the ordinance that it cannot do under the leases, we are unable to see how the application of the County rent law to them violates the implied covenant of good faith and fair dealing. As Lessees have already consented to price controls, by their own admission, there is no additional burden imposed on them by the County rent law.

*7. This is not a case for application of the doctrine of equitable estoppel.*

"Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [431 P.2d 245].)

The government may be bound by an equitable estoppel in the same way as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of the court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of the estoppel. (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 496-497 [91 Cal.Rptr. 23, 476 P.2d 423].) However, an estoppel will not be applied against the government if to do so would effectively nullify a strong rule of policy, adopted for the benefit of the public. (*Id.*, at p. 493.)

In the case before us there are no underlying equitable facts upon which to base the doctrine. The County never misled Lessees to believe that

their rents would not be controlled. Section 16 of the leases explicitly stated that Lessees were to be subject to price controls for all goods, services, and facilities furnished to the public on the leasehold over the term of the leases. Sections 3 and 41 made Lessees subject to all ordinances. The imposition of rent controls is always a possibility to anyone engaged in the property rental field, and the enactment of a rent control law was a foreseeable, albeit unlikely event, at the time the leases were entered into.

Even if the doctrinal elements were present, the analysis would require a second step of weighing the public policy of protecting tenants from soaring rents during a time of shortage of affordable housing against the prejudice to Lessees. Here, however, there is no injury from applying the County rent law to Lessees. Although Lessees contend that they are being deprived of a fair return on their investment, they admit that "the County has, in fact, a *greater* ability to control rents through the mechanism of the lease provisions them [*sic*] it does through the County Rent Law." The prejudice to Lessees, therefore, is nonexistent.

## CONCLUSION

The County rent law did not unconstitutionally impair the contract between Lessees and the County and is a reasonable exercise of the police power in response to the exigency which called it forth. Tenants are protected from prohibitive rent increases while landlords remain assured of recovering a fair and reasonable return on their investment.

Section 16 is compatible and consistent with the County rent law. Sections 3 and 41 made Lessees subject to all County ordinances.

The County did not misrepresent its intention to exercise statutory rent control over Lessees. The County rent law is not discriminatory, arbitrary or capricious. Application of rent control to Lessees is therefore a matter for legislative discretion.

## DISPOSITION

The judgment is affirmed.

Lui, J., and Danielson, J., concurred.