Filed 7/31/23  Fyfe v. California Consortium of Addiction Programs etc. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ALASTAIR COLIN FYFE, | |
| Plaintiff and Appellant, | C095315 |
| v. | (Super. Ct. No. 34-2020-80003515-CU-WM-GDS) |
| CALIFORNIA CONSORTIUM OF ADDICTION PROGRAMS AND PROFESSIONALS, | |
| Defendant and Respondent. | |

Individuals providing counseling services in certain alcohol and drug programs must be certified.  (Cal. Code of Regs., tit. 9, §§ 13000, 13005, 13010 et seq.)  The California Consortium of Addiction Programs and Professionals (Consortium) is approved to certify alcohol and drug counselors.  It certified Alastair Colin Fyfe as an alcohol and drug counselor.

1

Consortium's Ethics Committee and Credentialing Board subsequently determined that allegations against Fyfe had been corroborated and that a suspension was proper. Consortium's Appeals Panel affirmed the findings and increased the suspension. The trial court denied Fyfe's petition for writ of mandate.

Fyfe now contends (1) he was denied due process and fair proceedings, and (2) the adverse findings are not supported by a factual record. We conclude Fyfe received adequate notice of the allegations, he had an opportunity to defend against them, and he has not established prejudice requiring reversal.[1] We will affirm the trial court order denying Fyfe's petition for writ of mandate.

---

[1] Consortium moved to strike Fyfe's appellate reply brief as untimely and because it raised new facts and arguments. We exercise our discretion to deny the motion, but we have not considered factual assertions or arguments raised for the first time in the reply brief. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10; *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.)

Fyfe's motion to correct and augment the record is denied. Fyfe asked to augment the record to include his declaration in support of ex parte application for stay filed in the trial court and the trial court's order denying the stay application. Fyfe argued the declaration should be included in the record because it is one of only two declarations by Fyfe in this matter and the minute order shows Fyfe's stay application was denied. But Fyfe did not demonstrate how the declaration and order are relevant to the issues on appeal. Fyfe also asked to augment the record to include a 17-page document he claims was attached to a September 1 e-mail from Fyfe to Kimberly Elkins. Fyfe suggested the attachment was inadvertently omitted from the clerk's transcript. He added that even if the document was not inadvertently omitted, we should exercise our discretion to admit it under Code of Civil Procedure section 909. He asserted that because the Appeals Panel considered the attachment it should be part of the administrative record. However, it has not been established that the 17-page document was attached to the September 1 e-mail to Kimberly Elkins and was considered by the Appeals Panel. And Code of Civil Procedure section 909 does not apply because we are not making independent factual determinations in this matter. Fyfe's request for judicial notice is also denied. Fyfe asked this Court to take judicial notice of the docket in a criminal case against his client A.M. He argued the docket is relevant to the timeline for the attachment to the September 1 e-mail to Kimberly Elkins. But Fyfe did not explain which part of the 15-page docket is relevant to this matter.

BACKGROUND

As part of his certification as an alcohol and drug counselor, Fyfe agreed to comply with Consortium's code of conduct, which required him to refrain from misrepresenting his professional qualifications (principle 1b) and from engaging in a business relationship with a client (principle 2c). Following certification, Fyfe began working for Dolan Mental Health, a private entity providing drug and alcohol counseling services to drug offenders under a federal diversion program. After learning that Fyfe had acted outside the scope of his certification, Dolan Mental Health discharged Fyfe. And when Dolan Mental Health learned that Fyfe had engaged in additional inappropriate conduct during his employment, it submitted a complaint regarding Fyfe to Consortium.

The complaint submitted by Dolan Mental Health alleged that Fyfe had advised a client to stop taking a psychotropic medicine, guidance that was beyond the scope of his certification. It further alleged that Fyfe had refused to write a favorable progress report for a client unless the client signed a letter praising Fyfe's work. We will refer to the first allegation as the scope of certification allegation, and the second as the quid pro quo allegation.

On March 5, 2020,[2] Consortium informed Fyfe by letter that it had received an ethics complaint alleging that Fyfe violated the code of conduct. The notice provided information about the complaint process and enclosed the code of conduct and the disciplinary guidelines. The notice did not provide further details about the complaint.

Fyfe asked Consortium for the identity of the complainant, dates of the alleged incidents, and details of the complaint. Consortium said an investigator would contact Fyfe soon. Fyfe asked Consortium for a copy of the complaint. Consortium informed

---

[2] Dates refer to 2020 unless otherwise stated.

Fyfe it could not release documents relating to ethics cases because they were confidential.

Rebecca Norton investigated the complaint against Fyfe. She interviewed Fyfe's former boss Jonathan Dolan, along with witnesses Tia Barnes and Katie Kupu and Fyfe's former clients A.M. and C.S. Barnes said that during a pretrial staff meeting in court, Fyfe had said he advised a client to reduce his medicine intake because the psychiatrist did not know what she was doing when she prescribed the medication. Pretrial officer Kupu gave a similar account, saying Fyfe said he told his client to stop taking his psychotropic medication. Fyfe's former client C.S. told Norton that in the context of discussing a false positive drug test result, Fyfe told C.S. to "get off" certain medication and Fyfe did not know why the psychiatrist would put C.S. on that medication. Fyfe's client A.M. told Norton he asked Fyfe to write a letter to the court confirming A.M.'s participation in a particular program and he asked Fyfe every other day for about six months if Fyfe had sent the letter, but Fyfe would not write the letter unless A.M. wrote a letter praising Fyfe. According to A.M., Fyfe told A.M. what to write in the letter for Fyfe and the letter A.M. wrote was not true.

Norton also interviewed Fyfe. She told him there were two allegations against him. She told Fyfe it was alleged that at a pretrial staff meeting in federal court Fyfe admitted he had instructed a client to stop taking his psychotropic medication. Norton said it was also alleged that Fyfe had pressured a client to write a letter of support in exchange for Fyfe writing a letter confirming the client's participation in a program. During the interview, Fyfe denied the allegations that he gave a client medication advice or that he pressured a client to write a letter. Fyfe said the allegations were false and the product of office bullying. He e-mailed Norton additional information supporting his position. Norton concluded there was sufficient evidence to substantiate the allegations.

The complaint, Norton's investigation notes, and the documents Fyfe gave Norton, were all submitted to the Consortium's Ethics Committee. After reviewing the materials,

4

the Ethics Committee determined the allegations against Fyfe were corroborated and recommended sanctions. The Credentialing Board reviewed the same material presented to the Ethics Committee, along with the Ethics Committee's recommendation, and concluded the allegations were proven. The Credentialing Board imposed sanctions against Fyfe.

Consortium notified Fyfe by letter that the Ethics Committee and the Credentialing Board determined Fyfe had violated the code of conduct by misrepresenting his educational or professional qualifications and engaging in a business relationship with a client. The letter identified the code of conduct provisions Fyfe violated. It further stated that in accordance with the disciplinary guidelines, the Credential Board imposed a 90-day suspension and mandated the completion of 15 continuing education units in ethics and six continuing education units in boundaries. The letter explained that to appeal the decision Fyfe must submit a written request within 30 days to Consortium. It directed Fyfe to a website for information about the complaint process and disciplinary guidelines.

Fyfe submitted a written appeal. He claimed he stayed within the scope of his certification in the incident involving C.S., describing his version of events. Fyfe denied establishing a business relationship with a client, a charge he said related to asking A.M. for a favor. He described the circumstances leading to A.M.'s written praise of Fyfe's work.

The Appeals Panel reviewed the record and held a hearing. Fyfe appeared at the hearing and argued against the allegations. He also provided additional documents. After considering the evidence and argument, the Appeals Panel decided the allegations against Fyfe were corroborated and that sanctions were proper. It denied Fyfe's appeal and increased the suspension of Fyfe's certification from 90 days to one year. It also mandated 48 hours of additional supervision by a qualified supervisor. The September 3 notice of the Panel's decision indicated the higher sanction was based on the following:

5

multiple allegations had been received against Fyfe, Fyfe showed indifference to the impact of his conduct on clients, and Fyfe was unwilling to accept accountability or showed an inability to alter future behavior.

Fyfe filed a verified petition for peremptory writ of mandate and complaint for injunctive relief against the Department of Health Care Services and Consortium, seeking an order staying or vacating the decisions against him. He subsequently dismissed the Department of Health Care Services.

The trial court denied the writ petition. It found that Consortium notified Fyfe of the allegations, Norton informed Fyfe of the allegations during the May 15 interview, and Fyfe submitted documents and argument in response to the allegations, indicating that he understood them. The trial court ruled Consortium gave Fyfe a reasonable opportunity to respond and present a defense, showed the reasons for its decision, and the penalty imposed was rational. The trial court concluded Consortium did not deny Fyfe his common law right to fair procedure.

STANDARD OF REVIEW

Although Fyfe's petition was brought under Code of Civil Procedure section 1085, it should have been brought under section 1094.5.[3] (*Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 813-814 (*Anton*) [section 1085 petition treated as a petition brought under section 1094.5], superseded by statute on another point as stated in *Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 678, fn. 11.) Section 1094.5 applies to the review of a final administrative decision in a case where the common law right to fair procedure applies. (*Anton,* at pp. 815-816; see *Gutkin v. University of Southern California* (2002) 101 Cal.App.4th 967, 979.) The inquiry under section 1094.5 is "whether the respondent has proceeded without, or in excess of, jurisdiction; whether

---

[3] Undesignated statutory references are to the Code of Civil Procedure.

6

there was a fair trial; and whether there was any prejudicial abuse of discretion.  Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."  (§ 1094.5, subd. (b).)

The fairness of an administrative proceeding is a question of law which we review de novo.  (*Doe v. University of Southern California* (2016) 246 Cal.App.4th 221, 239; *Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1442 (*Rosenblit*).)  We review the trial court's factual findings under the substantial evidence test, regardless of the nature of the right involved.  (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. 10; *Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 574 (*Rand*); *Rosenblit*, at p. 1443.)  Under that test, we determine whether there is any evidence or reasonable inference deducible from the evidence that, viewed in the light most favorable to the trial court's judgment, supports the trial court's factual findings.  (*Antelope Valley Press v. Poizner* (2008) 162 Cal.App.4th 839, 849, fn. 11.)  We do not reweigh the evidence.  (*Ibid.*)

DISCUSSION

I

Fyfe contends he was denied constitutional due process and fair proceedings.

A

California courts have long recognized a common law right to fair procedure which protects individuals from arbitrary or unfair exclusion, expulsion, or disciplinary decisions by private organizations that act as gatekeepers over the right to practice a trade or profession.  (*Potvin v. Metropolitan Life Ins. Co.* (2000) 22 Cal.4th 1060, 1071-1072 (*Potvin*); *Dougherty v. Haag* (2008) 165 Cal.App.4th 315, 317; *Applebaum v. Board of Directors* (1980) 104 Cal.App.3d 648, 656.)  The right was developed in a series of California Supreme Court cases sometimes known as the *Marinship-Pinsker* or *Marinship-Pinsker-Ezekial-Potvin* line of cases.  (*Yari v. Producers Guild of America, Inc.* (2008) 161 Cal.App.4th 172, 176.)  The cases focus on fair procedure rather than due

7

process because the actions of a private organization like Consortium are not necessarily those of the state. (*Applebaum*, at p. 657.) The right to fair procedure derives from common law and not the Constitution. (*Pinsker v. Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 550, fn. 7 (*Pinsker II*).) Consortium assumes the common law right to fair procedure applies and we will do the same.

When the common law right to fair procedure applies, the organization's decision-making must be substantively rational and procedurally fair. (*Potvin, supra*, 22 Cal.4th at p. 1066.) Procedural fairness includes adequate notice of the charges and a reasonable opportunity to be heard in defense. (*Ezekial v. Winkley* (1977) 20 Cal.3d 267, 278; *Pinsker II, supra*, 12 Cal.3d at pp. 553, 555.) However, "[t]he common law requirement of a fair procedure does not compel formal proceedings with all the embellishments of a court trial [citation], nor adherence to a single mode of process. It may be satisfied by any one of a variety of procedures which afford a fair opportunity for an applicant to present his position. As such, . . . court[s] should not attempt to fix a rigid procedure that must invariably be observed. Instead, the [organizations] themselves should retain the initial and primary responsibility for devising a method which provides an applicant adequate notice of the 'charges' . . . and a reasonable opportunity to respond. In drafting such procedure, and determining, for example, whether an applicant is to be given an opportunity to respond in writing or by personal appearance, the organization should consider the nature of the tendered issue and should fashion its procedure to insure a fair opportunity for an applicant to present his position. Although the association retains discretion in formalizing such procedures, the courts remain available to afford relief in the event of the abuse of such discretion." (*Pinsker II,* at pp. 555-556, fn. omitted, italics omitted.)

B

Fyfe argues he did not receive fair notice of the allegations against him because the notice lacked specificity and Consortium did not identify the factual basis for the

8

allegations. Fyfe claims he was left to guess about the allegations and could not adequately prepare a response. The record does not support his argument.

Consortium promptly notified Fyfe it received an ethics complaint against him. Norton informed Fyfe of the factual basis for the allegations during the May 15 interview.

Norton asked Fyfe if he told a judge that he had instructed a client to stop taking his medication; Fyfe denied making such a statement to the judge. He also denied telling the client to stop taking his medication. Fyfe told Norton such guidance would not have been within the scope of his certification. Instead, he said he supported the client's choice, discussed the possibilities with the client, and told the client to contact the nurse practitioner.

Norton and Fyfe also discussed the letter A.M. wrote on Fyfe's behalf. Fyfe explained why A.M. sent the letter and Fyfe denied pressuring A.M. to write the letter.

Fyfe sent Norton additional information after the interview. His post-interview e-mails to Norton show he knew the basis for the allegations. Fyfe told Norton he never demanded favors from clients. Fyfe also forwarded communications regarding C.S. not taking a prescribed medicine. Fyfe reiterated to Norton that he merely supported the client's decision to stop taking the drug until the client could talk to the nurse practitioner.

Fyfe's written appeal to the Appeals Panel further demonstrates that Fyfe understood the factual basis for the allegations and mounted a defense. His written appeal said someone complained that Fyfe had given medication advice to C.S. But Fyfe denied giving C.S. medication advice. He explained what he told C.S., what he said in court on February 10, and why his statements to C.S. were not outside the scope of his certification.

The written appeal also acknowledged that an allegation was based on A.M.'s February 14 letter in support of Fyfe. According to Fyfe, Norton told him that asking

9

A.M. for a favor – writing a complimentary letter -- created a business relationship with a client.  Fyfe's written appeal described what Fyfe told A.M. and denied asking A.M. for a favor.  The written appeal did not say Fyfe was unaware of the factual basis for the allegations against him.

At the hearing before the Appeals Panel, Fyfe addressed the February 10 court meeting and the circumstances surrounding the letter from A.M.  The documents Fyfe submitted to the Appeals Panel further show that Fyfe understood the basis of the quid pro quo allegation.[4]

Fyfe received adequate notice of the allegations against him and he had an opportunity to present his defense to the allegations.[5]

II

Fyfe further contends the adverse findings are not supported by a factual record.

It would have been a better practice if Consortium had articulated the factual basis for its decisions.  Nevertheless, the trial court correctly concluded that Fyfe was adequately informed of the factual basis for the allegations.  The holding in *Rosenblit,*

---

[4] Although the initial letter from Consortium indicated a violation of principle 2 (professional boundaries with clients) and principle 3 (client confidentiality), Consortium ultimately found that Fyfe violated principle 1b (misrepresenting professional qualifications) and principle 2c (engaging in a business relationship with a client).  The findings tracked the allegations articulated by Norton in her interview with Fyfe.

[5] Fyfe asserts additional procedural contentions, but he did not bring them to the attention of the Appeals Panel or the trial court.  He may not raise them for the first time in this court.  (*Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 143; *Rand, supra*, 206 Cal.App.4th at p. 587.)  Fyfe also argues the trial court misapplied the standards applicable to its review of Consortium's decisions.  However, the contention is not supported by meaningful argument and citation to authority.  For that reason, we do not consider it.  (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785; *Maral v. City of Live Oak* (2013) 221 Cal.App.4th 975, 984-985.)

*supra*, 231 Cal.App.3d at pages 1447-1448, is distinguishable because in that case the petitioner did not know which incident formed the basis for the allegations.

Fyfe understood the basis for the allegations and Consortium issued decisions consistent with those allegations. Fyfe addressed those allegations with the Appeals Panel and the trial court. Under the circumstances, Fyfe has no shown prejudice. (*Anton, supra*, 19 Cal.3d at p. 826 [rejecting fair procedure claim where the petitioner did not demonstrate prejudice]; *Guilbert v. Regents of University of California* (1979) 93 Cal.App.3d 233, 241 [requiring showing of prejudice in appeal from denial of petition for writ of administrative mandamus].) For that reason, the denial of his writ petition was proper.

## DISPOSITION

The trial court order denying Fyfe's petition for a writ of mandate is affirmed. Consortium shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                           /S/
                                       MAURO, J.


We concur:


_____/S/_____
ROBIE, Acting P. J.


_____/S/_____
BOULWARE EURIE, J.

11